UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION


| | | |
|---|---|---|
| LORENZA I. BARNETTE, Jr., | ) | 4:15CV2226 |
| | ) | |
| Petitioner | ) | |
| | ) | JUDGE JAMES S. GWIN |
| v. | ) | (Mag. Judge Kenneth S. McHargh) |
| | ) | |
| JASON BUNTING, | ) | |
| Warden, | ) | |
| | ) | |
| Respondent | ) | REPORT AND |
| | ) | <u>RECOMMENDATION</u> |


McHARGH, MAG. JUDGE

This 28 U.S.C. § 2254 petition is before the magistrate judge pursuant to

Local Rule 72.2(b)(2).  Before the court is the petition of Lorenza I. Barnette, Jr., for

a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254.  The petitioner is in the

custody of the Ohio Department of Rehabilitation and Correction pursuant to

journal entry of sentence in the case of *State of Ohio v. Barnette*, Case No. 09-CR-

1122 (Mahoning County Oct. 26, 2011 ).  (Doc. 7, RX 16.)  For the following reasons,

the magistrate judge recommends that the petition be denied.

Barnette has filed a petition pro se for a writ of habeas corpus, arising out of

his 2011 convictions for several counts of aggravated murder, and other crimes, in

the Mahoning County (Ohio) Court of Common Pleas.  (Doc. 1.)  In his petition,

Barnette raises four grounds for relief:

> 1. The trial court abused its discretion when it denied petitioner's
> motion to reopen the case.

2.  The trial court abused its discretion in precluding defense counsel from impeaching the credibility of Detective Kelly with a specific instance of conduct that was clearly probative of his character for truthfulness.

3. The trial court erred when it overruled appellant's motion in limine to prohibit BCI analysts from testifying regarding statistical DNA population frequency estimates generated by the FBI's CODIS database by FBI personnel not subject to cross-examination.

4.  Ineffective assistance on the part of petitioner's trial and appellate attorney depriving petitioner of his Sixth Amendment right to competent counsel.

(Doc. 1.)  The respondent has filed a Return of Writ (doc. 7), and the petitioner has filed a Traverse (doc. 8).


## I.  FACTUAL AND PROCEDURAL BACKGROUND

The court of appeals set forth the following factual and procedural background:

On October 1, 2009, the State of Ohio filed an indictment against Barnette containing two counts of aggravated murder, R.C. 2903.01(A)(F) with death penalty specifications; two counts of aggravated murder, R.C. 2903.01(B)(F) with death penalty specifications; two counts of kidnapping, R.C.2905.01(A)(2); two counts of aggravated robbery, R.C.2911.01(A)(3)(c); and arson, R.C.2909.03(A)(1)(B)(2).  On March 9, 2011, the State filed a bill of particulars alleging that Barnette, along with two other individuals, murdered Jaron Roland and Darry Woods by smothering and binding the victims with duct tape and plastic while committing or attempting to commit a robbery, suffocating them to death.  The bill further alleged that the three men kidnapped Roland and Woods and lit a rental car on fire.

A jury trial commenced on October 3, 2011.  Two days later, a subpoena duces tecum was served upon the Youngstown Police

Department requesting all documentation pertaining to "any finding of a false claim of entitlement to overtime compensation benefits or the over claiming of entitlement of overtime compensation by Lt. John Kelty."  Kelty had previously been found to have violated two rules of the General Orders Manual of the Youngstown Police Department, and Barnette proffered the evidence for purposes of impeachment, which the State opposed.  Outside the presence of the jury, the trial court heard the parties' arguments; Barnette argued that Kelty's actions were probative of truthfulness and therefore subject to cross-examination.  The State argued Barnette failed to establish how Kelty's reprimand was relevant or probative of truthfulness, and evidence of the reprimand would shift the attention to the administration of the Police Department, as opposed to the guilt or innocence of Barnette.  The trial court overruled the motion finding:

the reprimand of Lieutenant Kelty is not related to the current matter or his role in the investigation.  The court further finds that reprimand concerns matters which occurred approximately two years after the investigation occurred in the case currently called for trial.  Finally the Court finds that Internal Affairs did not find the Lieutenant to have acted untruthfully, but rather improper and unprofessionally.

Barnette next filed a motion in limine which sought to prohibit testimony of BCI analysts Brenda Gerardi and Christopher Smith regarding DNA population frequency estimates, contending this raised a Confrontation Clause issue, asserting the information is testimonial in nature, and since Smith and Gerardi had no personal knowledge of how to prepare the database used for basing the statistical calculations, Barnette's rights were violated.  The State argued that the sort of testimony offered by Gerardi and Smith had been upheld in other cases and is part of the regular practice of the scientific community; moreover, the requirement of an FBI witness to testify as to how the statistics are calculated would place an impractical burden on the State when using such information.  The trial court denied Barnette's motion, concluding that the statistical DNA evidence is non-testimonial and therefore the Confrontation Clause does not apply.

After the State rested, Barnette made a Rule 29 motion to dismiss, which was overruled.  Additionally, the arson charge was amended to reflect that the damage to the car was over $500 in value.

3

After Barnette rested, he filed a motion to reopen the case and requested a material witness warrant, arguing that State's witness, Alfonda Madison, committed crimes the day before he testified and that on the day he testified criminal complaints were filed and warrants were issued relating to those crimes.  Barnette contended that these actions were grounds for cross-examination as they go to Madison's propensity for truthfulness, as well as potential bias and motive.  The trial court overruled Barnette's requests, and the parties thereafter presented closing arguments.

The following day Barnette was found guilty of all four counts of aggravated murder, two counts of kidnapping, and one count of arson. Barnette was found not guilty on both counts of aggravated robbery.

During the mitigation portion of the trial the jury found that the aggravating circumstances did not outweigh the mitigating factors. The trial court proceeded to sentencing, and finding no reason to set aside the recommendation of the jury, as to the aggravated murder of Woods and death penalty specifications contained in count one, the trial court sentenced Barnette to life imprisonment without parole. Count two was merged with count one.  As to count three, the aggravated murder of Roland and death penalty specifications, the trial court sentenced Barnette to life imprisonment without parole. Count four was merged with count three.  As to counts five and six, the kidnapping of Woods and Roland, Barnette was sentenced to ten years on each, and eighteen months on count nine, the arson conviction, with all counts to be served consecutively to each other.

(Doc. 7, RX 20, at 1-3; *State v. Barnette*, No. 11 MA 196, 2014 WL 7339076, at *1-*2

(Ohio Ct. App. Dec. 17, 2014).

Barnette filed a timely appeal of his convictions, and raised the following

three assignments of error on direct appeal:

1.  The trial court abused its discretion when it denied appellant's motion to reopen the case.

2.  The trial court abused its discretion in precluding defense counsel from impeaching the credibility of Detective Kelty with a specific

4

instance of conduct that was clearly probative of his character for truthfulness.

3.  The trial court erred when it overruled appellant's motion in limine to prohibit BCI analysts from testifying regarding statistical DNA population frequency estimates generated by the FBI's CODIS database by FBI personnel not subject to cross-examination.

(Doc. 7, RX 17.)  The court of appeals affirmed the judgment of the trial court.  (Doc. 7, RX 20; *Barnette*, 2014 WL 7339076.)

Barnette next filed a timely notice of appeal to the Supreme Court of Ohio, and set forth the following three propositions of law:

1.  Pursuant to the Due Process Clause of the Fourteenth Amendment and Article I, § 16 of the Ohio Constitution, a criminal defendant must be given a "full and fair" opportunity to present a defense.

2.  Pursuant to the Sixth Amendment to the United States Constitution and Art. I, § 10 of the Ohio Constitution, a criminal defendant has a right to confront witnesses against him.  Cross-examination using specific instances of prior conduct is appropriate if clearly probative of untruthfulness.

3.  It is a violation of the Sixth and Fourteenth Amendments for a BCI analyst to testify regarding statistical DNA population frequency estimates generated by the FBI's CODIS database by FBI personnel not subject to cross examination.

(Doc. 7, RX 22.)  On July 8, 2015, the state supreme court denied jurisdiction and dismissed the appeal as not involving any substantial constitutional question.  (Doc. 7, RX 24; *State v. Barnette*, 143 Ohio St.3d 1405, 34 N.E.3d 133 (2015).)

On March 20, 2015, Barnette filed a pro se application for reopening his appeal pursuant to Ohio App. Rule 26(B), based on allegations of ineffective

5

assistance of appellate counsel.  He argued that counsel failed to raise the following

errors on appeal:

> 1.  The appellant was denied the right to a speedy trial and effective assistance of trial counsel and appellant [sic].
>
> 2.  Ineffective assistance of trial counsel and appellate counsel, and a conflict of interest due to Mr. J. Gerald Ingram acting as trial counsel and appellate counsel.
>
> 3.  Cumulative errors deprive a criminal defendant and criminal appellant of a fair trial in violation of his right[s] under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and the corresponding provisions of the Ohio Constitution.

(Doc. 7, RX 25.)

The court of appeals denied his application, ruling that it was untimely, that

he failed to show good cause for the untimely filing, and because the application did

not contain a sworn statement.  (Doc. 7, RX 28; *State v. Barnette*, No. 11 MA 196,

2015 WL 1467200 (Ohio Ct. App. Mar. 31, 2015) (per curiam).)  Barnette did not

appeal that decision to the state supreme court.

On Aug. 13, 2015, Barnette filed a pro se motion for leave to file a delayed

motion for new trial based on newly discovered evidence.  The trial court denied the

motion.  (Doc. 7, RX 29.)  Barnette appealed, raising two assignments of error:

> 1.  The trial court abused its discretion by overruling appellant's motion for leave to file a delayed motion for new trial because the court's judgment entry made no mention of whether it found that appellant was unavoidably prevented from the discovering the newly discovered evidence.
>
> 2.  The trial court abused its discretion by failing to hold a hearing on appellant's motion for leave to file a delayed motion for a new trial.

6

(Doc. 7, RX 35.)  At the time the Return of Writ was filed, there had been no decision on that appeal.[1]  (Doc. 7, at 6.)

Barnette then filed a timely petition for a writ of habeas corpus.


## II.  HABEAS CORPUS REVIEW

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254, which provides the standard of review that federal courts must apply when considering applications for a writ of habeas corpus.  Under the AEDPA, federal courts have limited power to issue a writ of habeas corpus with respect to any claim which was adjudicated on the merits by a state court.  The Supreme Court, in *Williams v. Taylor*, provided the following guidance:

> Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied -- the state-court adjudication resulted in a decision that (1) "was contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

---

[1]  Since the Return was filed, the state appellate court issued an opinion affirming the judgment of the trial court.  *State v. Barnette*, No. 15MA0160, 2016 WL 3078904 (Ohio Ct. App. May 24, 2016).

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2002).  *See also Lorraine v. Coyle*, 291 F.3d 416, 421-422 (6th Cir. 2002), *cert. denied*, 538 U.S. 947 (2003).

A state court decision is "contrary to" clearly established Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases."  *Williams*, 529 U.S. at 405.  *See also Price v. Vincent*, 538 U.S. 634, 640 (2003).

A state court decision is not unreasonable simply because the federal court considers the state decision to be erroneous or incorrect.  Rather, the federal court must determine that the state court decision is an objectively unreasonable application of federal law.  *Williams*, 529 U.S. at 410-12; *Lorraine*, 291 F.3d at 422.

## III.  PROCEDURAL DEFAULT

The respondent contends that the fourth ground of the petition has been procedurally defaulted.  (Doc. 7, at 25-28.)  The fourth ground of the petition is: "Ineffective assistance on the part of petitioner's trial and appellate attorney depriving petitioner of his Sixth Amendment right to competent counsel."  In his supporting facts, Barnette argues that trial counsel was ineffective for failing to hire a DNA expert for an independent DNA analysis.  "Also Petitioner's appeal attorney was the same attorney who represented him at trial and he failed to challenge this issue on Petitioner's direct appeal."  (Doc. 1, at p. 10.)

A habeas claim may be procedurally defaulted in two distinct ways.  First, by failing to comply with state procedural rules.  *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006) (citing *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986)).  Second, by failing to raise a claim in state court, and to pursue the claim through the state's ordinary review process.  *Williams*, 460 F.3d at 806 (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999)).

A habeas petitioner cannot obtain relief unless he has completely exhausted his available state remedies.  *Coleman v. Thompson*, 501 U.S. 722, 731 (1991); *Buell v. Mitchell*, 274 F.3d 337, 349 (6th Cir. 2001) (citing *Coleman v. Mitchell*, 244 F.3d 533, 538 (6th Cir.), *cert. denied*, 534 U.S. 977 (2001)).  To satisfy the  exhaustion requirement, a habeas petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."  *O'Sullivan*, 526 U.S. at 845.  The exhaustion requirement is satisfied when the highest court in the state has been given a full and fair opportunity to rule on the petitioner's claims.  *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994) (citing *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990)).  A petitioner cannot circumvent the exhaustion requirement by failing to comply with state procedural rules.  *Coleman*, 501 U.S. at 731-732; *Buell*, 274 F.3d at 349.

Where a state court has failed to address a prisoner's federal claim(s) because the prisoner failed to meet a state procedural requirement, the state judgment rests on independent and adequate state procedural grounds, barring federal habeas

9

relief.  *Coleman*, 501 U.S. at 729-730; *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Morales v. Coyle*, 98 F.Supp.2d 849, 860 (N.D. Ohio 2000), *aff'd*, 507 F.3d 916 (6th Cir. 2007).  Thus, where a state prisoner has procedurally defaulted his federal claims in state court, habeas review of those claims is barred "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."  *Buell*, 274 F.3d at 348 (quoting *Coleman*, 501 U.S. at 750); *Davie v. Mitchell*, 324 F.Supp.2d 862, 870 (N.D. Ohio 2004), *aff'd*, 547 F.3d 297 (6th Cir. 2008), *cert. denied*, 558 U.S. 996 (2009).

The court considers four factors to determine whether a claim has been procedurally defaulted:  (1) the court must determine whether there is a state procedural rule that is applicable to the petitioner's claim, and whether the petitioner failed to comply with the rule; (2) the court must decide whether the state courts actually enforced the procedural sanction; (3) the court must decide whether the state procedural forfeiture is an adequate and independent state ground on which the state can rely to foreclose review of the federal claim; and, (4) the petitioner must demonstrate that there was cause for him not to follow the procedural rule, and that he was actually prejudiced by the alleged constitutional error.  *Buell*, 274 F.3d at 348 (citing *Maupin*, 785 F.2d at 138); *Jacobs v. Mohr*, 265 F.3d 407, 417 (6th Cir. 2001) (quoting *Maupin*).

Any claims that Barnette could have asserted in his direct appeal, but did not, are defaulted under the Ohio doctrine of res judicata. *Coleman*, 244 F.3d at 538; *State v. Szefcyk*, 77 Ohio St.3d 93, 671 N.E.2d 233 (1996) (syllabus); *State v. Perry*, 10 Ohio St.2d 175, 176, 226 N.E.2d 104, 105-106 (1967) (syllabus, ¶9).

The Ohio rule of res judicata satisfies the first three factors in *Maupin*. *Jacobs*, 265 F.3d at 417. The fourth factor is that the petitioner must demonstrate that there was cause for him not to follow the procedural rule, and that he was actually prejudiced by the alleged constitutional error. "Cause" for a procedural default is ordinarily shown by "some objective factor external to the defense" which impeded the petitioner's efforts to comply with the state's procedural rule. *Coleman*, 501 U.S. at 753 (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).

The fourth ground of the petition is: "Ineffective assistance on the part of petitioner's trial and appellate attorney depriving petitioner of his Sixth Amendment right to competent counsel." The ineffective assistance of trial counsel claim was not raised on direct appeal. *See generally* doc. 7, RX 17.

Barnette cannot return to state court to exhaust this claim because the Ohio Supreme Court has ruled that arguments that could have been raised in an initial appeal (and were not) will be barred from consideration on appeal following remand, under the doctrine of res judicata. State v. Hutton, 100 Ohio St.3d 176, 182, 797 N.E.2d 948, 956 (2003); State v. Gillard, 78 Ohio St.3d 548, 549, 679 N.E.2d 276 (1997), cert. denied, 523 U.S. 1108 (1998). State law no longer would

11

permit Barnette to raise this particular claim, hence it is defaulted.  See Williams, 460 F.3d at 806; Adams v. Bradshaw, 484 F.Supp.2d 753, 769 (N.D. Ohio 2007).

To overcome this procedural default, Barnette must demonstrate that there was cause for his failure to appeal this claim.  Barnette did not address the procedural default argument in his Traverse (doc. 8), thus he has not shown cause.

In the petition itself, Barnette argues that appellate counsel (same counsel as trial counsel) was ineffective for failing to raise the issue that trial counsel was ineffective for failing to hire a DNA expert.  (Doc. 1, at p. 10.)

Ineffective assistance of counsel can serve as cause to overcome procedural default.  *Smith v. Ohio, Dept. of Rehab. and Corr.*, 463 F.3d 426, 432 (6th Cir. 2006) (citing *Deitz v. Money*, 391 F.3d 804, 809 (6th Cir. 2004)).  However, an ineffective assistance of counsel claim which could be asserted as cause for another procedurally defaulted federal claim can itself be procedurally defaulted.  *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000).  "A claim of ineffective assistance of counsel must be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default."  *Deitz*, 391 F.3d at 809 (citing *Edwards*, 529 U.S. at 452).

Barnette attempted to file a Rule 26(B) application based on ineffective assistance of appellate counsel.  Claims of ineffective assistance of appellate counsel must be raised in a motion for reconsideration before the Ohio Court of Appeals.  *Monzo v. Edwards*, 281 F.3d 568, 577 (6th Cir. 2002) (citing *State v. Murnahan*, 63

12

Ohio St.3d 60, 584 N.E.2d 1204 (1992)); Ohio App. R. 26(B).  Such a motion must be

filed in the court of appeals within 90 days of the appellate judgment.  *State v.*

*Lamar*, 102 Ohio St.3d 467, 468, 812 N.E.2d 970 (2004) (per curiam), *cert. denied*,

543 U.S. 1168 (2005); *State v. Reddick*, 72 Ohio St. 3d 88, 90, 647 N.E.2d 784, 786

(1995) (per curiam).  The court of appeals denied his application, ruling that it was

untimely, that he failed to show good cause for the untimely filing, and because the

application did not contain a sworn statement.  (Doc. 7, RX 28; *Barnette*, 2015 WL

1467200.)  Where the state court enforces a procedural sanction by denying an

untimely application for reopening, the Sixth Circuit has found that this is an

adequate state procedural ground.  *Smith*, 463 F.3d at 436 n.7; *Monzo*, 281 F.3d at

577-578.

     Under Ohio law, claims of ineffective assistance of counsel where the

defendant was represented on appeal by the same attorney who represented him in

the trial court must be raised in a post-conviction petition pursuant to Ohio Rev.

Code § 2953.21.  *Stojetz v. Ishee*, 389 F.Supp.2d 858, 881-882 (S.D. Ohio 2005)

(citing *State v. Cole*, 2 Ohio St.3d 112, 443 N.E.2d 169 (1982)).  Barnette did not file

such a petition.

     The time for filing a § 2953.21 petition expired 180 days after the trial

transcript was filed in the direct appeal.  Ohio Rev. Code § 2953.21(A)(2).  Where a

post-conviction petition is filed beyond the 180-day time limitation, Section

2953.23(A) precludes the trial court from entertaining the petition, except in the

13

cases of two exceptions which do not apply to Barnette's petition.  *Gibson v. Wolfe*,
No.  2:04CV272, 2006 WL 1028168, at *8 (S.D. Ohio Apr. 17, 2006); Ohio Rev. Code
§ 2953.23(A).  Barnette did not raise this issue before the state courts, thus it
cannot serve as cause.

The petition should not be granted on the basis of the fourth ground, which is
procedurally defaulted.

## IV.  ABUSE OF DISCRETION

The first ground of the petition is:  "The trial court abused its discretion when
it denied petitioner's motion to reopen the case."  The respondent argues that
"abuse of discretion" claims are not cognizable for federal habeas relief, because
such a claim is not sufficient to state a constitutional violation.  (Doc. 7, at 8, 13.)

An alleged abuse of discretion by the state trial court, without more, is not a
constitutional violation.  *Stanford v. Parker*, 266 F.3d 442, 459 (6th Cir. 2001), *cert.*
*denied*, 537 U.S. 831 (2002) (citing *Sinistaj v. Burt*, 66 F.3d 804, 808 (6th Cir.
1995)).  However, when the court's decision results in an alleged violation of the
defendant's constitutional rights, the court will examine the underlying issue.
*Sinistaj*, 66 F.3d at 808; *Carnail v. Bagley*, No. 1:02CV1411, 2006 WL 1876546, at
*12 (N.D. Ohio July 3, 2006).

14

On direct appeal, Barnette did not claim that the trial court's alleged abuse of discretion resulted in a constitutional violation. (Doc. 7, RX 17, at 8-10.)  Nor does the petition allege a resulting constitutional violation.  (Doc. 1, at p. 4-5.)

Barnette has failed to establish that the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court.  The petition should not be granted on the basis of the first ground.


## V.  CONFRONTATION CLAUSE

### A.  Second Ground:  Proffer of Internal Affairs and Disciplinary Records

The second ground of the petition is:  "The trial court abused its discretion in precluding defense counsel from impeaching the credibility of Detective Kelly with a specific instance of conduct that was clearly probative of his character for truthfulness."  Barnette again frames the issue as an abuse of discretion.  Here, however, because the state court's decision resulted in an alleged violation of the petitioner's constitutional rights, the court will examine the underlying issue.  *Sinistaj*, 66 F.3d at 808.

On direct appeal, Barnette had argued that the trial court had misapplied Ohio Evid. Rule 608(B), by failing to allow cross-examination, to impeach credibility, on an incident wherein Police Lt. Kelty had improperly obtained call-out

15

compensation for an unrelated investigation which he supervised via telephone, rather than in-person.  (Doc. 7, RX 17, at 11-13.)

The state court of appeals ruled on the claim as follows:

"Evid.R. 608(B) allows, in the trial court's discretion, cross-examination on specific instances of conduct 'if clearly probative of truthfulness or untruthfulness.' " State v. Boggs, 63 Ohio St.3d 418, 588 N.E.2d 813 (1992), paragraph one of the syllabus.  "The trial court may, in the exercise of its sound discretion, decide not to permit such cross-examination."  State v. Smith, 4th Dist. No. 94 CA 34, 1995 WL 625652 *3 (Oct. 12, 1995) (internal citations omitted).

Kelty's conduct and the resulting reprimand occurred two years after the 2009 murder investigation resulting in Barnette's arrest, as well as being wholly unrelated to this case.  Although Barnette asserts Kelty's actions were probative of his truthfulness, this contention is not supported by the record.  The investigation findings, made part of the record through the trial court's judgment entry denying the admission of the proffered impeachment evidence, indicate that Kelty demonstrated unprofessional conduct by choosing to supervise a 2011 homicide case from his home as opposed to reporting to the scene. The report indicates that Kelty "did maintain phone contact with the on scene detectives as their investigation progressed and ensured that proper personnel were apprised of the situation."  The report concluded that Kelty should have physically reported to the scene since he submitted an overtime card for callout compensation pay, resulting in the conclusion that Kelty was found to have engaged in "Improper Conduct."

The trial court's decision to exclude this line of cross-examination was not unreasonable.  Kelty's actions were improper and unprofessional but not clearly probative of untruthfulness.  Boggs, supra.  In light of the record, the trial court did not abuse its discretion in the present case in prohibiting defense counsel from questioning Kelty about the internal disciplinary action.  Accordingly, Barnette's second assignment of error is meritless.

(Doc. 7, RX 20, at 6; *Barnette*, 2014 WL 7339076, at *4-*5.)

16

The respondent contends that, to the extent that this ground constitutes a violation of state evidentiary rules, or an abuse of discretion, it is a matter of state law which is not cognizable for habeas relief.  However, the respondent recognizes that this claim raises a possible federal issue involving the Confrontation Clause of the U.S. Constitution.  (Doc. 7, at 14.)

The state court of appeals did not address the Confrontation Clause issue, or related federal case law, regarding this claim, thus the issue for this habeas court is whether the state court decision was contrary to clearly established federal law, as determined by the Supreme Court of the United States.

The Confrontation Clause of the Sixth Amendment provides an accused with the right to be confronted with the witnesses against him.  *Crawford v. Washington*, 541 U.S. 36, 42 (2004); *Pointer v. Texas*, 380 U.S. 400, 406 (1965).  A central purpose of the Confrontation Clause is to allow the defendant the opportunity to cross-examine the witnesses against him.  *Vasquez v. Kirkland*, 572 F.3d 1029, 1035-1036 (9th Cir. 2009), *cert. denied*, 558 U.S. 1126 (2010) (citing *Davis v. Alaska*, 415 U.S. 308, 315-316 (1974)); *Drake v. Woods*, 547 F.Supp.2d 253, 264 (S.D. N.Y. 2008).

The Supreme Court "has never held that the Confrontation Clause entitles a criminal defendant to introduce extrinsic evidence for impeachment purposes." *Nevada v. Jackson*, 133 S.Ct. 1990, 1994 (2013) (citing *Delaware v. Fensterer*, 474 U.S. 15, 22 (1985) (per curiam), and other cases); *see also Ross v. District Attorney of*

17

*County of Allegheny*, 672 F.3d 198, 207 (3d Cir. 2012) (citing cases). The Confrontation Clause only guarantees the opportunity for cross-examination, and the right to confront one's accusers normally is satisfied if defense counsel receives wide latitude at trial to question witnesses. *Pennsylvania v. Ritchie*, 480 U.S. 39, 53 (1987); *see also Jackson*, 133 S.Ct. at 1994; *Ross*, 672 F.3d at 207.

The Supreme Court has found that the Confrontation Clause does not prevent a trial judge from imposing "reasonable limits" on cross-examination. *Vasquez*, 572 F.3d at 1036 (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986)). Thus, "trial judges retain wide latitude . . . to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Van Arsdall*, 475 U.S. at 679; *see also Washington v. Renico*, 455 F.3d 722, 729 (6th Cir. 2006), *cert. denied*, 549 U.S. 1306 (2007); *Drake*, 547 F.Supp.2d at 264.

The respondent argues that the court's preclusion of the evidence of Kelty's disciplinary records for impeachment purposes was a reasonable restriction on Barnette's right to cross-examination. Thus, the decision of the state court of appeals rejecting the claim was not contrary to federal law. (Doc. 7, at 16-17.)

The court of appeals found that the trial court did not abuse its discretion in prohibiting defense counsel from questioning Kelty about the internal disciplinary

18

action.  This court finds no violation of the Confrontation Clause, or other federal constitutional law, in the court's rulings.

Barnette has failed to establish that the state court's contested evidentiary rulings were contrary to clearly established federal law, as determined by the Supreme Court.  The petition should not be granted on the basis of the second ground.

<u>B.  Third Ground:  Testimony of BCI Analysts</u>

The third ground of the petition is:

> The trial court erred when it overruled appellant's motion in limine to prohibit BCI analysts from testifying regarding statistical DNA population frequency estimates generated by the FBI's CODIS database by FBI personnel not subject to cross-examination.

This claim was presented to the state court of appeals in the same language.  (Doc. 7, RX 17, at 14.)

The supporting brief on appeal stated that Barnette had filed a pretrial Motion in Limine "to prohibit the testimony at trial of [two BCI analysts] regarding statistical DNA population frequency estimates."  (Doc. 7, RX 17, at 14.)  Barnette asserted that the motion in limine argued that "the frequency estimates and probabilities were the product of the FBI's CODIS database and software promulgated by FBI personnel not subject to cross-examination."  *Id.*  His motion was denied.

Barnette summarized his claim as follows:

19

The admission of the highly prejudicial population frequency statistics without affording the defendant the opportunity to test the procedure, method, and calculation used to create them was an abuse of the trial court's discretion.

(Doc. 7, RX 17, at 17.)

The state court addressed this claim as follows:

The Confrontation Clause of the Sixth Amendment provides that in "all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him" and this protection is applicable to the states through the Fourteenth Amendment of the Constitution of the United States.  Pointer v. Texas, 380 U.S. 400, 403–06, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965).  To conform with a defendant's federal confrontation rights, the testimonial statements of a witness absent from trial shall only be admitted into evidence against the defendant when the witness is unavailable to testify and when the defendant has had a prior opportunity to cross-examine the witness.  Crawford v. Washington, 541 U.S. 36, 59, 68–69, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).  A de novo standard of review is applied to a claim that a criminal defendant's rights have been violated under the Confrontation Clause.  State v. Rinehart, 4th Dist. No. 07CA2983, 2008–Ohio–5770, ¶ 20 (internal citations omitted).

Barnette argues that the trial court's error resulted in a violation of his constitutional right to confront witnesses against him.  The State responds that this court recently concluded that such testimony does not violate the Sixth Amendment in State v. Smith, 7th Dist. No. 11 MA 120, 2013–Ohio–756; appeal dismissed as improvidently granted, 137 Ohio St.3d 1470, 2014–Ohio–176, 2 N.E.3d 266.  In Smith, the defendant challenged the forensic analyst who testified because that analyst did not generate the DNA profile, and further argued that BCI analysts should not be permitted to testify about the statistical frequency of the DNA profile occurring in the population because this number was produced by entering the profile into an FBI computer program containing an FBI-generated population database.  Smith argued that a knowledgeable FBI representative would have to testify as to how the database was established and how the number was derived.

Although Barnette does not challenge the forensic analysts in the present case as they did generate the DNA profiles that they testified

to, he does take issue with their testimony regarding FBI generated DNA population frequency estimates. However, in Smith this court held:

> The Ohio Supreme Court has ruled that an expert can testify to the statistical conclusions about DNA evidence without being an expert in statistical analysis. State v. Foust, 105 Ohio St.3d 137, 2004–Ohio–7006, 823 N.E.2d 836. The Court explained that questions regarding the reliability of statistics on population frequency go to the weight rather than the admissibility of the evidence. Id. (thus counsel was not ineffective for failing to object to the analyst's testimony on population frequency), citing State v. Pierce, 64 Ohio St.3d 490, 501, 597 N.E.2d 107 (1992). See also State v. Adams, 103 Ohio St.3d 508, 525, 2004–Ohio–5845, 817 N.E.2d 29, ¶ 80–82.

> Various courts have ruled that an analyst's testimony on the population frequency estimate obtained from the FBI database was permissible and the statistic obtained was not testimonial evidence under Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L .Ed.2d 177 (2004). See State v. Bolton, 12th Dist. No. 96385, 2012–Ohio–169, ¶ 64; State v. Bruce, 5th Dist. No.2006–CA–45, 2008–Ohio–5709, ¶ 62, 69; State v. Powell, 2d Dist. No. 18095 (Dec. 15, 2000); State v. Breeze, 10th Dist. No. 92AP–258 (Nov. 24, 1992). See also State v. Collins, 6th Dist. No. L–05–1399, 2007–Ohio–3578, ¶ 17, 21–24 (court can allow expert to testify on statistics even though they were solely the result of a statistical program supplied by the FBI); State v. Stokes, 8th Dist. No. 71654 (Dec. 11, 1997); State v. Minor, 47 Ohio App.3d 22, 24, 546 N.E.2d 1343 (10th Dist.1988) (expert can apply facts in evidence to scientific table)."

Smith, ¶ 35–36.

As this court has recently analyzed this issue and held that the population frequency estimates obtained from the FBI database are permissible and not testimonial in nature, and moreover, goes to weight rather than admissibility, the trial court did not err in denying Barnette's motion in limine and permitting the testimony from the BCI

> analysts, rather than requiring testimony from an FBI analyst.
> Accordingly Barnette's third assignment of error is meritless.

(Doc. 7, RX 20, at 7-9; *Barnette*, 2014 WL 7339076, at *5-*6.)

The respondent contends that the population frequency estimates obtained from the FBI database were neither hearsay nor testimonial, thus the testimony of the DNA analysts did not deprive Barnette of his Confrontation Clause rights. (Doc. 7, at 22.)  The respondent asserts that the state court decision rejecting Barnette's Confrontation Clause claim, on the basis that the contested DNA evidence was not testimonial, should be found to be a reasonable application of *Crawford* and its progeny.  *Id.* at 24.

The state court of appeals applied the appropriate federal constitutional precedent in its analysis of this claim, thus the question for this habeas court is whether that court's decision involved an unreasonable application of clearly established federal law, as determined by the U.S. Supreme Court.  A state court decision is not unreasonable simply because this court considers the state decision to be erroneous or incorrect.  Rather, this court must determine that the state court decision is an objectively unreasonable application of federal law.  *Williams*, 529 U.S. at 410-12; *Lorraine*, 291 F.3d at 422.

*Crawford* held that the Confrontation Clause requires that testimonial statements of witnesses absent from trial are properly admitted only where the declarant is unavailable, and where the defendant has had a opportunity to cross-examine.  *Crawford*, 541 U.S. at 59, 68.  The *Crawford* Court did not undertake a

22

comprehensive definition of "testimonial," but noted that, at a minimum, it covers "prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." *Crawford*, 541 U.S. at 68; *United States v. James*, 712 F.3d 79, 88 (2d Cir. 2013), *cert. denied*, 134 S.Ct. 2660 (2014); *United States v. Cromer*, 389 F.3d 662, 672 (6th Cir. 2004).  Testimony may also be defined as "[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact." *Cromer*, 389 F.3d at 672 (quoting *Crawford*, 541 U.S. at 51).

Subsequent decisions of the Supreme Court have addressed the issue of what evidence should be considered "testimonial."  The Second Circuit has summarized some of the decisions relevant to the issue before this court:

> In Melendez–Diaz v. Massachusetts, 557 U.S. 305, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009), the Court concluded that "certificates of analysis" identifying a seized substance as an illicit drug should not have been introduced against the defendant absent an opportunity for the defendant to confront the person who prepared the certificate.  The Melendez–Diaz Court reached this conclusion in part because the certificates "are quite plainly affidavits: declarations of facts written down and sworn to by the declarant before an officer authorized to administer oaths."  Id. at 310, 129 S.Ct. 2527 *90 (internal quotation marks omitted).  "The 'certificates' are functionally identical to live, in-court testimony, doing 'precisely what a witness does on direct examination.' " Id. at 310–11, 129 S.Ct. 2527 (quoting Davis v. Washington, 547 U.S. 813, 830, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006)).  "We can safely assume that the analysts were aware of the affidavits' evidentiary purpose, since that purpose—as stated in the relevant state-law provision—was reprinted on the affidavits themselves." Id. at 311, 129 S.Ct. 2527.  The Court once again declined to spell out a comprehensive definition of testimonial.

*James*, 712 F.3d at 89-90.

In Bullcoming v. New Mexico, —— U.S. ——, 131 S.Ct. 2705, 180 L.Ed.2d 610 (2011), the question presented was whether a "certificate of analyst" containing the results of a blood-alcohol test administered pursuant to a DUI arrest required the testimony of the analyst who conducted the gas chromatograph test.  Id. at 2710–11.  The trial court had admitted the test as a business record, and allowed its introduction through the testimony of "an analyst who did not sign the certification or personally perform or observe the performance of the test reported in the certification."  Id. at 2713.  The Court rejected the suggestion that the report was nontestimonial:

> In all material respects, the laboratory report in this case resembles those in Melendez–Diaz.  Here, as in Melendez–Diaz, a law-enforcement officer provided seized evidence to a state laboratory required by law to assist in police investigations.  Like the analysts in Melendez–Diaz, [the analyst] tested the evidence and prepared a certificate concerning the result of his analysis.  Like the Melendez–Diaz certificate, [the certificate here] is "formalized" in a signed document.... In sum, the formalities attending the "report of blood alcohol analysis" are more than adequate to qualify [the analyst's] assertions as testimonial.

Id. at 2717 (citations omitted).

*James*, 712 F.3d at 90-91.

The Second Circuit summarized the state of the law after those cases as

follows:

> We distill from this pre-Williams case law the principle that a laboratory analysis is testimonial if the circumstances under which the analysis was prepared, viewed objectively, establish that the primary purpose of a reasonable analyst in the declarant's position would have been to create a record for use at a later criminal trial.

James, 712 F.3d at 94.  That would seem clear enough.

Then the Supreme Court decided *Williams v. Illinois*, 132 S.Ct. 2221 (2012).

24

In *Williams*, the Court addressed "whether it was a violation to allow an expert to testify in a rape case that 'a DNA profile produced by an outside laboratory, Cellmark, matched a profile produced by the state police lab using a sample of petitioner's blood.'" *James*, 712 F.3d at 91 (quoting *Williams*, 132 S.Ct. at 2227).

In a plurality opinion, the Court held:

> We now conclude that this form of expert testimony does not violate the Confrontation Clause because that provision has no application to out-of-court statements that are not offered to prove the truth of the matter asserted. When an expert testifies for the prosecution in a criminal case, the defendant has the opportunity to cross-examine the expert about any statements that are offered for their truth. Out-of-court statements that are related by the expert solely for the purpose of explaining the assumptions on which that opinion rests are not offered for their truth and thus fall outside the scope of the Confrontation Clause. Applying this rule to the present case, we conclude that the expert's testimony did not violate the Sixth Amendment.

*Williams*, 132 S. Ct. at 2228.  The dissent disputed the finding that the expert's testimony had not been offered for its truth.  *Id.* at 2269 (Kagan, J., dissenting).

In the words of the Second Circuit, the *Williams* Court "came to no clear consensus as to what constituted a testimonial statement in this context, however, issuing a plurality opinion, two concurrences, and a dissent." *James*, 712 F.3d at 91.  As noted by Justice Kagan, in dissent, "the five Justices who agreed on the judgment 'agree on very little,' and 'have left significant confusion in their wake.'" *James*, 712 F.3d at 94 (quoting *Williams*, 132 S.Ct. at 2277 (Kagan, J., dissenting)).

This court does not find that the *Williams* decision provides "clearly established" federal law on the Confrontation Clause, for the purposes of this case.

*See generally United States v. Turner*, 709 F.3d 1187, 1189 (7th Cir. 2013), *cert. denied*, 134 S.Ct. 2660 (2014) ("divergent analyses and conclusions" of plurality & dissent "sow confusion as to precisely what limitations the Confrontation Clause may impose"); *United States v. Garvey*, 688 F.3d 881, 885 (7th Cir. 2012), *cert. denied*, 133 S.Ct. 1305 (2013) (Court's reasoning "sharply divided;" quoting Justice Kagan that "Five Justices specifically reject every aspect of [the plurality's] reasoning and every paragraph of its explication," quoting *Williams*, 132 S.Ct. at 2265 (Kagan, J., dissenting)); *Washington v. Griffin*, 142 F. Supp. 3d 291, 295 (E.D. N.Y. 2015) (after *Williams*, "Supreme Court's Confrontation Clause jurisprudence is hardly a model of clarity"); *Bruce v. Warden, Lebanon Corr. Inst.*, No. 2:10CV889, 2013 WL 796562, at *18 (S.D. Ohio Mar. 4, 2013) (quoting *Garvey*).

The state court here held that the population frequency estimates obtained from the FBI database are not testimonial in nature, thus did not offend the Confrontation Clause.  This court finds that conclusion is not an unreasonable application of the Supreme Court's Confrontation Clause jurisprudence.  The analyst reports in *Melendez-Diaz* and *Bullcoming* were individualized for the particular defendant in each case.  Unlike the reports in *Melendez-Diaz* and *Bullcoming*, the frequency estimates were not prepared (by the FBI) for the primary purpose of  creating a record for use at Barnette's criminal trial, but were rather intended as an objective database for broader application.

26

Barnette has failed to establish that the state court's decision involved an unreasonable application of clearly established federal law on the Confrontation Clause, as determined by the U.S. Supreme Court.  The petition should not be granted on the basis of the third ground.

## SUMMARY

The petition for a writ of habeas corpus should not be granted.  The fourth ground of the petition has been procedurally defaulted.  As to the remaining grounds, Barnette has failed to establish that the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the U.S. Supreme Court.

## RECOMMENDATION

The petition for a writ of habeas corpus should be denied.


Dated:   Aug. 29, 2016               /s/ Kenneth S. McHargh
                                     Kenneth S. McHargh
                                     United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the District Court's

order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).