IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| LORENZA I. BARNETTE, JR., | CASE NO. 4:15-cv-2226 |
| | CASE NO. 4:23-cv-2027 |
| Petitioner, | |
| | DISTRICT JUDGE |
| v. | JAMES S. GWIN |
| | |
| JASON BUNTING, *Warden*, | MAGISTRATE JUDGE |
| | JAMES E. GRIMES JR. |
| Respondent. | |
| | **REPORT &** |
| | **RECOMMENDATION** |

In 2015, pro se Petitioner Lorenza Barnette filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254. Doc. 1. Pending before the Court are Barnette's eight habeas claims raised in his 2021 motion under Federal Rule of Civil Procedure 60(b) to reopen this proceeding, Doc. 13, and his two claims raised in a separate 2023 federal habeas petition, Doc. 24, which was consolidated with this case, *see* Doc. 22. Barnette is in custody at the Marion Correctional Institution due to a journal entry of sentence in the case *State v. Barnette*, Mahoning County Court of Common Pleas, Case No. 09 CR 1122. The Court referred this matter to a Magistrate Judge under Local Rule 72.2 for the preparation of a Report and Recommendation. For the following reasons, I recommend that Barnette's claims in his 2021 motion to reopen and his 2023 petition be dismissed.

**Summary of facts**

In habeas corpus proceedings brought by a person under 28 U.S.C. §
2254, factual determinations made by state courts are presumed correct. 28
U.S.C. § 2254(e)(1). The petitioner has the burden of rebutting that
presumption by clear and convincing evidence. *Franklin v. Bradshaw*, 695 F.3d
439, 447 (6th Cir. 2012).

The Ohio Court of Appeals for the Seventh Appellate District
summarized the facts underlying Barnette's conviction as follows:

> {¶2} On October 1, 2009, the State of Ohio filed an
> indictment against Barnette containing two counts
> of aggravated murder, R.C. 2903.01(A)(F) with
> death penalty specifications; two counts of
> aggravated murder, R.C. 2903.01(B)(F) with death
> penalty specifications; two counts of kidnapping,
> R.C.2905.01(A)(2); two counts of aggravated
> robbery, R.C.2911.01(A)(3)(c); and arson,
> R.C.2909.03(A)(1)(B)(2). On March 9, 2011, the
> State filed a bill of particulars alleging that
> Barnette, along with two other individuals,
> murdered Jaron Roland and Darry Woods by
> smothering and binding the victims with duct tape
> and plastic while committing or attempting to
> commit a robbery, suffocating them to death. The
> bill further alleged that the three men kidnapped
> Roland and Woods and lit a rental car on fire.
>
> {¶3} A jury trial commenced on October 3, 2011.
>
> ***
>
> {¶5} After the State rested, Barnette made a Rule 29
> motion to dismiss, which was overruled.
> Additionally, the arson charge was amended to
> reflect that the damage to the car was over $500 in
> value.

2

{¶6} After Barnette rested, he filed a motion to reopen the case and requested a material witness warrant, arguing that State's witness, Alfonda Madison, committed crimes the day before he testified and that on the day he testified criminal complaints were filed and warrants were issued relating to those crimes. Barnette contended that these actions were grounds for cross-examination as they go to Madison's propensity for truthfulness, as well as potential bias and motive. The trial court overruled Barnette's requests, and the parties thereafter presented closing arguments.

{¶7} The following day Barnette was found guilty of all four counts of aggravated murder, two counts of kidnapping, and one count of arson. Barnette was found not guilty on both counts of aggravated robbery.

{¶8} During the mitigation portion of the trial the jury found that the aggravating circumstances did not outweigh the mitigating factors. The trial court proceeded to sentencing, and finding no reason to set aside the recommendation of the jury, as to the aggravated murder of Woods and death penalty specifications contained in count one, the trial court sentenced Barnette to life imprisonment without parole. Count two was merged with count one. As to count three, the aggravated murder of Roland and death penalty specifications, the trial court sentenced Barnette to life imprisonment without parole. Count four was merged with count three. As to counts five and six, the kidnapping of Woods and Roland, Barnette was sentenced to ten years on each, and eighteen months on count nine, the arson conviction, with all counts to be served consecutively to each other.

*State v. Barnette*, No. 11 MA 196, 2014 WL 7339076, at *1–2 (Ohio Ct. App. Dec. 17, 2014).

3

**Procedural background**

*Direct appeal*

Barnette appealed to the Ohio court of appeals, and raised the following assignments of error:

> 1. The trial court abused its discretion when it denied appellant's motion to reopen the case.
>
> 2. The trial court abused its discretion in precluding defense counsel from impeaching the credibility of Detective Kelty with a specific instance of conduct that was clearly probative of his character for untruthfulness.
>
> 3. The trial court erred when it overruled appellant's motion in limine to prohibit BCI analysts from testifying regarding statistical DNA population frequency estimates generated by the FBI's CODIS database by FBI personnel not subject to cross-examination.

Doc. 30-1, at 132–33 (Exhibit 18).[1] The Ohio court of appeals affirmed the trial court's judgment. *Id*. at 181–89 (Exhibit 21).

Barnette appealed to the Ohio Supreme Court, and raised the following three propositions of law:

> 1. Pursuant to the Due Process Clause of the Fourteenth Amendment and Article I, § 16 of the Ohio Constitution, a criminal defendant must be given a "full and fair" opportunity to present a defense.
>
> 2. Pursuant to the Sixth Amendment to the United States Constitution and Art. I, § 10 of the Ohio

---

[1]     Barnette's claims are reproduced as written. In this report and recommendation, all of the citations to the docket refer to the ECF document and page number shown at the top of the page.

> Constitution, a criminal defendant has a right to confront witnesses against him. Cross-examination using specific instances of prior conduct is appropriate if clearly probative of untruthfulness
>
> 3. It is a violation of the Sixth and Fourteenth Amendments for a BCI analyst to testify regarding statistical DNA population frequency estimates generated by the FBI's CODIS database by FBI personnel not subject to cross examination.

Doc. 30-1, at 196 (Exhibit 23). On July 8, 2015, the Ohio Supreme Court declined under its rule of practice 7.08(B)(4) to accept jurisdiction of Barnette's appeal. *Id.* at 213 (Exhibit 25).

*Ohio Appellate Rule 26(B) application to reopen*

Meanwhile, in March 2015, Barnette pro se filed an Ohio Appellate Rule 26(B) application to reopen his direct appeal.[2] Doc. 30-1, at 215 (Exhibit 26). He raised the following issues:

> 1. The appellant was denied the right to a speedy trial and affective assistance of trial counsel and appellant.

---

[2]  Ohio Appellate Rule 26(B) provides:

> A defendant in a criminal case may apply for reopening of the appeal from the judgment of conviction and sentence, based on a claim of ineffective assistance of appellate counsel. An application for reopening shall be filed in the court of appeals where the appeal was decided within ninety days from journalization of the appellate judgment unless the applicant shows good cause for filing at a later time.

> 2. Ineffective assistance of trial counsel and appellate counsel, and a conflict of interest due to Mr. J. Gerald Ingram acting as trial counsel and appellate counsel.

> 3. Cumulative errors deprive a criminal defendant and criminal appellant of a fair trial in violation of his right under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and the corresponding provisions of the Ohio Constitution.

*Id*. at 218–19 (Exhibit 26). In March 2015, the Ohio court of appeals denied the application because it was untimely and lacked the required sworn statement supporting the application. Doc. 30-1, at 227–29 (Exhibit 29). Barnette did not appeal.

*Motion for new trial*

In August 2015, Barnette filed a motion for leave to file a delayed motion for new trial based on newly discovered evidence. Doc. 30-1, at 294 (Exhibit 39). Barnette attached an affidavit provided by Rayshaun Powell, a fellow inmate, stating that State witnesses Asa Bush and Alfonda Madison had been coerced into giving perjured testimony. *Id*. at 301. Later that month, the trial court summarily denied the motion. *Id*. at 231 (Exhibit 30).

Barnette appealed and moved for the appointment of counsel. Doc. 30-1, at 239 (Exhibit 33). In his brief, he raised two assignments of error:

> 1. The trial court abused its discretion by overruling appellant's motion for leave to file a delayed motion for new trial because the court's judgment entry made no mention of whether it found that appellant was unavoidably prevented from the discovering the newly discovered evidence.

6

> 2. The trial court abused its discretion by failing to
> hold a hearing on appellant's motion for leave to file
> a delayed motion for a new trial.

Doc. 30-1, at 249 (Exhibit 36). The Ohio court of appeals denied Barnette's

motion for appointment of counsel. *Id*. at 246 (Exhibit 35). And in May 2016,

the court affirmed the trial court's ruling. *Id*. at 284–92 (Exhibit 38).

### *Federal habeas petition*

In October 2015, Barnette filed a federal habeas corpus petition under

28 U.S.C. § 2254. Doc. 1. He raised the following four grounds for relief:

> 1. The trial court abused its discretion when it
> denied Barnette's motion to reopen the case.
>
> 2. The trial court abused its discretion in precluding
> defense counsel from impeaching the credibility of
> Detective Kelty with a specific instance of conduct
> that was clearly probative of his character for
> untruthfulness.
>
> 3. The trial court erred when it overruled appellant's
> motion in limine to prohibit BCI analysts from
> testifying regarding statistical DNA population
> frequency estimates generated by the FBI's CODIS
> database by FBI personnel not subject to cross
> examination.
>
> 4. Ineffective assistance on the part of petitioner's
> trial and appellate attorney depriving petitioner of
> his Sixth Amendment right to competent counsel.

Doc. 1, at 4–9. The Magistrate Judge issued a Report and Recommendation

finding that ground four was procedurally defaulted and that the remaining

grounds failed on the merits. Doc. 9. In March 2017, the District Court

overruled Barnette's objections and adopted the report. Doc. 11, 12.

*Trial court filings*

Meanwhile, in 2016, Barnette continued to submit pro se, post-conviction filings with the trial court. These filings included a motion for disclosure of due process material, a motion to suppress Bush's and Madison's trial testimony, and a motion for leave to file a delayed motion to suppress. Doc. 30-1, at 472–99 (Exhibits 55–57). In August 2016, the trial court overruled all three motions. *Id.* at 507–11 (Exhibits 58–60). Barnette filed a series of motions to challenge his arrest warrant, Doc. 30-1, at 513–41 (Exhibits 61–64), all of which the trial court denied in August and September 2016, *id.* at 549–53 (Exhibits 65–67). In October 2016, Barnette filed a motion for writ of error quo warranto, disputing the date of his arrest and questioning the authority to charge and prosecute him. *Id.* at 555–65 (Exhibit 68). The same month, the trial court overruled Barnette's motion. *Id.* at 578 (Exhibit 69). Barnette did not appeal any of the trial court's rulings.

*First post-conviction petition*

In December 2016, Barnette filed in the trial court under Ohio Revised Code 2953.21 a petition to vacate a void judgment and conviction. Doc. 30-1, at 580 (Exhibit 70). He alleged that his arrest was unlawful, that he was denied the opportunity to challenge the grand jury, and that the police falsified the arrest reports and withheld them. These actions, he asserted, deprived the court of jurisdiction to try him. *Id.* at 584–89. A week later, the trial court

8

dismissed Barnette's petition as untimely. *Id*. at 603 (Exhibit 71). Barnette did not appeal.

*Second post-conviction petition*

In January 2017, Barnette filed under Ohio Revised Code 2953.23 a petition to vacate judgment. Doc. 30-1, at 610 (Exhibit 73). Barnette argued that the trial court lacked jurisdiction over him because he was arrested without a warrant or probable cause. He also argued that his indictment did not comply with Ohio Criminal Rule 6(F). *Id*. at 612–17. Two weeks later, the trial court dismissed the petition as untimely, finding that Barnette failed to show that he was unavoidably prevented from discovering the underlying facts necessary to present the claim for relief. *Id*. (Exhibit 74).

Barnette appealed to the Ohio court of appeals, and raised the following assignment of error:

> The trial court erred and abused its discretion when it dismissed appellant's petition to vacate void judgment the court lacks jurisdiction pursuant to R.C. 2953.23.

Doc. 30-1, at 650–63 (Exhibit 76). In December 2017, the Ohio court of appeals affirmed, finding that Barnette's petition was untimely and, alternatively, barred by the doctrine of res judicata because Barnette made the same arguments in several of his earlier motions and appeals. *Id*. at 705–11 (Exhibit 78).

Barnette appealed, raising the following proposition of law:

> Pursuant to the Due Process Clause of the Fourteenth Amendment and Section 16, Article 1, of the Ohio Constitution "no person … Shall be deprived of life, liberty, of property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws.

Doc. 30-1, at 720 (Exhibit 80). In May 2018, the Ohio Supreme Court declined under its rule of practice 7.08(B)(4) to accept jurisdiction over the appeal. *Id*. at 753 (Exhibit 81).

*Petition for disclosure of grand jury materials*

Meanwhile, in January 2017, Barnette filed in the trial court a petition to disclose Grand Jury materials. Doc. 30-1, at 755 (Exhibit 82). A week later, the trial court overruled Barnette's motion. *Id*. at 762 (Exhibit 83). Barnette did not appeal.

*Motion for reconsideration of sentence*

In January 2018, Barnette filed in the trial court a motion for reconsideration of his sentence. Doc. 30-1, at 764 (Exhibits 84). He argued that the trial court failed to notify him that he was subject to post-release control and challenged the court's imposition of consecutive sentences. *Id*. at 769–72. In March, Barnette sought a writ of mandamus in the Ohio Supreme Court to compel the trial court judge to rule on his motion. Doc. 30-2, at 35 (Exhibit 93). On April 12, the trial court overruled Barnette's motion in part, finding that his challenge to consecutive sentences was untimely and barred by res judicata. Doc. 30-2, at 6–8 (Exhibit 89). As for post-release control, the trial

10

court found that Barnette was entitled to a limited resentencing hearing to advise him of five years of post-release control. *Id*. On April 16, the trial judge moved to dismiss Barnette's petition for a writ of mandamus in the Ohio Supreme Court, pointing out that she had ruled on Barnette's motion on April 12. *Id*. at 69–70 (Exhibit 94). In June, the Ohio Supreme Court granted the trial judge's motion and dismissed the petition. *Id*. at 87 (Exhibit 95).

*Second motion for new trial*

In May 2018, Barnette moved for a new trial. Doc. 30-2, at 11 (Exhibit 90). He challenged his arrest warrant and the grand jury procedures, and alleged an ineffective-assistance-of-counsel claim for failing to hire a DNA expert and a *Brady*[3] claim for the state's alleged failure to turn over police reports. *Id*. at 12–14. In June 2018, the trial court summarily overruled Barnette's motion. *Id*. at 33 (Exhibit 92). Barnette did not appeal.

*Motion to vacate sentence*

In September 2018, Barnette filed in the trial court a motion under Ohio Criminal Rule 57 and Ohio Civil Rule 60(B) to vacate his sentence because the court failed to notify him of post-release control. Doc. 30-2, at 89 (Exhibit 96). In September 2019, the trial court issued a new sentencing entry, stating that it had conducted a new sentencing hearing and that Barnette would be subject to a mandatory term of five years of post-release control following his prison sentence. *Id*. at 104–07 (Exhibit 98).

---

[3]     *See Brady v. Maryland*, 373 U.S. 83 (1963).

Barnette, through counsel, appealed to the Ohio court of appeals and raised the following assignment of error:

> The trial court erred in modifying Appellant's sentence to add post-release control, as the Court was without jurisdiction to do so.

Doc. 30-2, at 110 (Exhibit 100). On December 21, 2020, the Ohio court of appeals sustained Barnette's assignment of error and reversed and vacated the trial court's judgment. *Id*. at 144 (Exhibit 102). The appellate court explained that the trial court erroneously conducted a full resentencing hearing, instead of a limited hearing on the post-release control issue, and remanded the case to the trial court to "hold a notification of post release control hearing in accordance with R.C. 2929.191." *Id*. at 149–50.

On June 28, 2021, the trial court issued a journal entry stating that it held a limited post-release control notification hearing and advised Barnette of the terms of his post-release control. Doc. 30-2, at 154 (Exhibit 103).

*Ohio Supreme Court petitions*

Meanwhile, in January 2019, Barnette pro se moved for leave in the Ohio Supreme Court to file a petition for a writ of quo warranto. Doc. 30-2, at 155, 204 (Exhibits 104 & 105). In his petition, Barnette asserted that the trial judge unlawfully held and exercised the office of common pleas judge. *Id*. at 161. As a result, Barnette alleged, the judge was unauthorized to rule on Barnette's challenges to his warrant, the indictment, and the grand jury process. *Id*. at 162–63. The trial judge filed a motion to dismiss Barnette's

petition, *id*. at 219 (Exhibit 106), which the Ohio Supreme Court granted on April 10, 2019, *id*. at 242 (Exhibit 108).

On September 13, 2019, Barnette filed a writ of mandamus asking the Ohio Supreme Court to compel the trial judge to (1) vacate his conviction because probable cause did not exist for his arrest warrant; and (2) issue a judgment entry for the April 30, 2019 post-release control notification hearing, among other things. Doc. 30-2, at 253 (Exhibit 109). The trial judge moved to dismiss, arguing that Barnette had an adequate remedy at law by way of a direct appeal to challenge his arrest and that the trial court had issued its sentencing entry imposing post-release control on September 17, 2019. *Id*. at 294–95 (Exhibit 110). On November 27, 2019, the Ohio Supreme Court granted the judge's motion to dismiss. *Id*. at 312 (Exhibit 111).

*Third motion for new trial*

In November 2020, Barnette filed in the trial court a motion for leave to file a delayed motion for new trial and a motion for a new trial, alleging that he had newly discovered a "Forensic Bioinformatics" DNA Report. Doc. 30-2, at 355–56, 382 (Exhibits 118, 119). On February 10, 2021, the trial court overruled Barnette's motion. *Id*. at 407 (Exhibit 121).

Barnette appealed, *id*. at 409 (Exhibit 122), but failed to file a timely merits brief. As a result, in October 2021, the Ohio court of appeals dismissed his appeal, *id*. at 413 (Exhibit 123).

*Writ of mandamus*

Meanwhile, on January 6, 2021, Barnette filed a writ of mandamus in the Ohio Supreme Court against the Mahoning County Clerk of Court and Deputy Clerk of Court. Doc. 30-2, at 314 (Exhibit 112). Barnette asked the Ohio Supreme Court to order these individuals to review his arrest warrant to determine whether probable cause existed to arrest him on the crimes for which he was convicted. *Id.* at 317. Barnette also requested production of documents, *id.* at 335 (Exhibit 113), and answers to interrogatories, *id.* at 339 (Exhibit 114). The respondents moved to dismiss, *id.* at 344 (Exhibit 115), and Barnette moved to amend his complaint to compel the respondents to determine if the indictment was "fair upon its face" and returned by a "properly constituted grand jury," *id.* at 349 (Exhibit 116). On March 17, 2021, the Ohio Supreme Court granted the respondents' motion to dismiss and denied Barnette's discovery requests and motion to amend the complaint. *Id.* at 353 (Exhibit 117).

*Second Ohio Rule 26(B) application to reopen*

In May 2021, Barnette filed in the Ohio court of appeals another Ohio Rule 26(B) application to reopen his direct appeal. Doc. 30-4, at 5 (Exhibit 186). Barnette raised five assignments of error: (1) appellate counsel was ineffective for not appealing a final judgment; (2) appellate counsel was ineffective for failing to make sure that Barnette "truly posse[sse]d meaningful appellate rights because he lacked a final, appealable order"; (3) trial counsel was

14

ineffective for not hiring a pathologist to challenge the State's cause of death; (4) trial counsel was ineffective for not looking into alleged inconsistencies in a State witness's testimony and for not securing a transcript; and (5) trial counsel was ineffective for many other errors committed throughout the case. *Id*. at 10–12. On July 15, 2021, the Ohio court of appeals denied Barnette's application as untimely without justification. *Id*. at 57–62 (Exhibit 189). The court also observed that Barnette's ineffective assistance of trial counsel claims were not applicable to a Rule 26(B) application to reopen, that they were barred by res judicata, and that Barnette's application was a successive petition unauthorized by law. *Id*. Barnette did not appeal.

### Complaint for a writ of prohibition

In May 2021, Barnette filed in the Ohio Supreme Court a writ of prohibition to prevent the Ohio court of appeals from assuming jurisdiction over his appeals and invalidating any past appeals that affirmed his conviction. Doc. 30-2, at 415–19 (Exhibit 124). The basis for Barnette's argument was that his original sentence lacked a post-release control notification. *Id*. The State filed a motion to dismiss, *id*. at 441 (Exhibit 125), which the Ohio Supreme Court granted in August 2021, *id*. at 461 (Exhibit 127).

### Petition to disclose grand jury materials

In August 2021, Barnette filed in the trial court a petition to disclose grand jury transcripts in his case to refresh the recollections of people involved

15

in a federal lawsuit that Barnette had filed.[4] Doc. 30-2, at 463–69 (Exhibit 128). On September 16, 2021, the trial court overruled Barnette's request. *Id*. at 479 (Exhibit 130). Barnette did not appeal.

*Third post-conviction petition*

On February 7, 2022, Barnette filed under Ohio Revised Code 2953.21 and 2945.79 and Ohio Criminal Procedure Rule 33(A) a petition to vacate or set aside the judgment of conviction or sentence. Doc. 30-3, at 7 (Exhibit 131). He raised two ineffective-assistance-of-trial-counsel claims. *Id*. at 7–15. The next day, Barnette filed a petition for grand jury transcripts to support his post-conviction petition. *Id*. at 256 (Exhibit 144). On February 17, the trial court overruled Barnette's post-conviction petition as untimely. *Id*. at 116 (Exhibit 132). The court explained that Barnette failed to satisfy the statutory exceptions for an untimely filing and that, alternatively, Barnette failed to demonstrate substantive grounds for relief. *Id*. The next day, the court overruled Barnette's request for grand jury transcripts because Barnette failed to establish a particularized need for the materials that outweighed the need for grand jury secrecy. *Id*. at 276 (Exhibit 146). The court also noted that it had overruled Barnette's post-conviction petition as untimely. *Id*.

Barnette appealed the trial court's ruling on his post-conviction petition and raised the following assignments of error:

---

[4]     The District Court dismissed under 28 U.S.C. § 1915(e)(2)(B) Barnette's federal case. *See Barnette v. Cantalamessa, et al.*, Case No. 4:21-cv-339 (*Order*, 10/29/2021).

> 1. The Trial Court abuse its discretion when it considerate the Appellant's post-conviction relief as untimely.
>
> 2. In violation of the Six Amendment Appellant's Trial Counsel was Ineffective for failing to proper investigate before promising Sherrica Barnette as a witness in opening statements.

Doc. 30-3, at 124 (Exhibit 134). Barnette moved to supplement the post-conviction record with the record considered on direct appeal, *id*. at 212 (Exhibit 137), which the appellate court denied as unnecessary, *id*. at 217 (Exhibit 138). On June 30, 2023, the Ohio court of appeals affirmed the trial court's decision. *Id*. at 219 (Exhibit 139). The court ruled that Barnette's petition was untimely. *Id*. at 223–26. It held that, under Ohio law, the post-conviction control resentencing did not revive Barnette's ineffective-assistance-of-counsel claim as it might have done in a federal habeas corpus case. *Id*. at 223–25. And it also found that Barnette's ineffectiveness claim was barred by the doctrine of res judicata, even though his trial and appellate counsel were the same. *Id*. at 223–26. The court observed that Barnette "filed six appeals in addition to his direct appeal and never attempted to raise this specific argument in any of those appeals." *Id*. at 226.

Barnette appealed to the Ohio Supreme Court and raised the following two proposition of law:

> 1. Pursuant to the Due Process Clause of the Fourteenth Amendment and Article I, 16 of the Ohio Constitution, a new sentence leads to a new judgment that reset the statute of limitations clock and allows a prisoner to attack both the new

17

> sentence and the undistributed original conviction without any possibility of facing the second or successive limits.
>
> 2. Pursuant to the Sixth Amendment to the United States Constitution and Art. I§10 of the Ohio Constitution, a criminal defendant has a right to effective counsel, and counsel has a duty to investigate before promising a witness in opening and later abandoning that promise.

Doc. 30-3, at 233 (Exhibits 141). On September 26, 2023, the Ohio Supreme Court declined under its rule of practice 7.08(B)(4) to accept jurisdiction. *Id*. at 254 (Exhibit 143).

### Motion for revised sentence

On March 2, 2022, Barnette filed in the trial court a motion for a revised sentence. Doc. 30-3, at 283 (Exhibit 148). He argued that his June 28, 2021 resentencing entry did not comply with Ohio law. *Id*. at 284. On March 18, 2022, the trial court overruled Barnette's motion. *Id*. at 298 (Exhibit 149). Barnette did not appeal.

### Complaint for writ of mandamus

In May 2022, Barnette filed in the Ohio court of appeals a writ of mandamus. Doc. 30-4, at 72, 76 (Exhibits 191, 192). He sought to compel the trial judge to issue a revised sentencing entry that complied with Crim.R. 32(C). *Id*. at 79. On September 19, 2022, the Ohio court of appeals denied the writ, finding that Barnette had an adequate remedy at law by way of an appeal of the trial court's March 18, 2022 entry overruling his motion for a revised

sentence. *Id*. at 138 (Exhibit 199); *State ex rel. Barnette v. Sweeney*, No. 22 MA 40, 2022 WL 4542003 (Ohio Ct. App. Sept. 19, 2022).

*Fourth post-conviction petition*

In June 2022, Barnette filed in the trial court under Ohio Revised Code 2953.21 and 2953.71 a petition to vacate or set aside his judgment of conviction or sentence. Doc. 30-3, at 306 (Exhibit 151). He alleged prosecutorial misconduct, trial counsel's ineffectiveness in investigating and in handling DNA matters, and problems with his indictment, warrant, and the grand jury. *Id*. at 308–18. On July 13, 2022, the trial court denied Barnette's petition as untimely and barred by res judicata. *Id*. at 342 (Exhibit 153). Barnette did not appeal.

*Application for DNA testing and request for police records*

In March 2023, Barnette filed in the trial court an application for DNA testing. Doc. 30-3, at 344 (Exhibit 154). On June 14, 2023, the trial court overruled Barnette's application because Barnette could not show that the DNA results would be outcome-determinative. *Id*. at 378 (Exhibit 157). The court cited the "extremely compelling" evidence produced at trial including "the surveillance video from the Dollar General store showing [Barnette] purchasing the items used in the commission of the crime." *Id*.

In May 2023, Barnette filed in the trial court a public records request to obtain all police records related to his arrest and subsequent investigation.

Doc. 30-3, at 460 (Exhibit 164). On June 14, 2023, the trial court overruled Barnette's request. *Id*. at 471 (Exhibit 166).

Barnette appealed, and raised the following assignments of error:

> 1. The Trial Court abused its discretion when it erroneously based its outcome determinative analysis on evidence as it existed at the time of the original trial rather than "all available admissible evidence" as required by R.C. 2953.74(D).

> 2. The Trial Court abused its discretion in denying Appellant's "Request obtain Public Records."

Doc. 30-3, at 387 (Exhibit 159). On March 27, 2024, the Ohio court of appeals affirmed the trial court's judgment. *State v. Barnette*, Case No. 2023-MA-89, 2024 WL 1329387 (Ohio Ct. App. March 27, 2024). Barnette appealed, but the Ohio Supreme Court declined to accept his appeal. *State v. Barnette*, Case No. 2024-0638, 236 N.E.3d 231 (table) (Ohio 2024).

*Complaint for writ of mandamus*

In February and April 2023, respectively, Barnette filed in the Ohio Supreme Court a complaint in mandamus and a motion for default judgment, requesting that the Court compel the Mahoning County Chief of Police to provide Barnette with public records of the investigation against him. Doc. 30-3, at 436, 454 (Exhibits 161, 162). On May 17, 2023, the Ohio Supreme Court dismissed the mandamus action and determined that the motion for default judgment was moot. *Id*. at 458 (Exhibit 163).

*Motion to reopen federal habeas claims*

Meanwhile, in October 2021, Barnette filed under Federal Civil Procedural Rule 60(b) a Motion to Reopen in his 2015 federal habeas case, asserting grounds that attacked his 2011 conviction. Doc. 13. The District Court transferred the motion to the Sixth Circuit for consideration as a successive petition under 28 U.S.C. § 2244(b)(3), Doc. 15, but the Sixth Circuit sent it back, Doc. 17. The Sixth Circuit found that because the state court had resentenced Barnette in 2019 and 2021 by imposing post-release control, the petition was not a successive petition. *Id*.

In February 2023, the District Court referred to me Barnette's Motion to reopen. *See* Order, filed 2/27/2023. I issued a report recommending that the Court deny Barnette's Motion. Doc. 18. On August 11, 2023, the District Court found that "[r]ather than adjudicating Barnette's reconsideration motion under Rule 60," I "should have construed the motion as a new federal habeas petition." Doc. 21, at 1. So the Court referred the case back to me and advised Barnette that he "may refile or supplement his petition within 42 days of this order." *Id*. at 4.

Barnette didn't refile or supplement his petition in this case. But on October 8, 2023, Barnette filed a new federal habeas petition, which was assigned case number 4:23-cv-02027. In that petition, Barnette raised two new grounds for relief. *See Barnette v. May*, 4:23-cv-02027, Doc. 1-2, at 5–6. The District Court consolidated the two cases and ordered that all future filings be

21

made in the first-filed case, number 4:15-cv-02226. Doc. 22. Barnette's October 2023 petition from case number 4:23-cv-02027 was filed on the docket in this case. Doc. 24. I then issued a briefing schedule instructing the Warden to answer the petition and the grounds for relief in Barnette's motion to reopen. Docs. 23, 31.

The Warden filed a Return to Writ as to the two grounds in the new petition, Doc. 30, and a Supplemental Return as to the eight grounds in Barnette's Motion to reopen, Doc. 34. Barnette filed a Traverse regarding the two grounds in his petition. Doc. 32. He didn't file a Traverse regarding the eight grounds in his Motion, and the time to do so has passed. Nevertheless, within that time frame Barnette filed a Motion for Evidentiary Hearing, Doc. 35, which contains arguments that I construe as his response. He also later filed a Request for Discovery. Doc. 38. All told, Barnette has raised the following ten grounds for relief:

> **Ground one**: No oath or affirmation exist. The Fourth Amendment requires an Oath or Affirmation. No Oath or Affirmation exist in this case, in violation of the Fourth and Fifth Amendments (violation of Due Process, void all proceedings).

> **Ground two**: The indictment was never returned. On October 1, 2009, an Indictment was filed on Mahoning County, Common Pleas Court's Docket Case Number 2009 CR 1122. This indictment although filed was not properly returned pursuant to Ohio Crim.R. (6)(F), or Fed Crim.R. (6)(F). More specifically the indictment was not concurred by the recommended number of jurors prescribe by Crim.R. (6)(F), and the indictment was not returned to a

judge or the judge presiding over the grand jury by its foreperson or deputy foreperson, in open court.

**Ground three**: The prosecution is holding the grand jury records. For the Prosecutor to hold the grand jury records, including the log, transcripts information on the transcriber, is a violation of *United States v. Williams*, 504 US. 36 (1992). That is a violation of Due Process and voids the indictment and proceedings.

**Ground four**: No quorum existed for the grand jury. The only authority that exists for a court is the record in the court, the docket sheet. In this case no record of a quorum exists and therefore no valid indictment exists, voiding all proceedings.

**Ground five**: No probable cause hearing voids the Indictment. Without a probable cause hearing, the grand jury has no basis for initiating an investigation.

**Ground six**: No grand jury array was produced....No grand jury array was produced by the Prosecutor to allow Plaintiff his right pursuant to Crim.R.6(B)(l), and Fifth Amendment.

**Ground seven**: Lack of standing. If an agency is not vested with authority by law, it lacks standing to bring a standing to bring a complaint, so the courts lack subject matter jurisdiction. In this case, the Government has not proven standing, meaning they have no standing, rendering the proceeding void.

**Ground eight**: Violation of due process void the judgment....Due process violations occurred: (1) when respondent failed to produce the documents in question pursuant to 28 U.S.C. § 2249; and (2) when the court did not ask for an order to show cause, to the government related to Petitioner's indictment.

Doc. 13, at 7–10.

23

**Ground [nine]**: In violation of the Six Amendment Mr. Barnette's Trial Counsel was Ineffective for failing to proper investigate before promising Sherrica Barnette as a witness in opening statements and later abandoning that promise.

**Ground [ten]**: Pursuant to the Due Process Clause of the Fourteenth Amendment and Art. I §10 of the Ohio Constitution, a new sentence leads to a new judgment that reset the statute of limitation clock and allows a prisoner to attack both the new sentence and the undisturbed original conviction without any possibility of facing the second or successive limits.

Doc. 24-2, at 5–6.[5]

## Legal Standard

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104–132, 110 Stat. 1214, petitioners must meet certain procedural requirements to have their claims reviewed in federal court. *Smith v. Ohio Dep't of Rehab. & Corr.*, 463 F.3d 426, 430 (6th Cir. 2006). "Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim." *Daniels v. United States*, 532 U.S. 374, 381 (2001). Although procedural default is sometimes confused with exhaustion, exhaustion and procedural default are distinct concepts. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). Failure to exhaust applies when state

---

[5]    Although Barnette's two grounds in his new petition are labeled grounds one and two, I label them grounds nine and ten here to avoid confusion with grounds one and two in Barnette's Motion to Reopen.

remedies are "still available at the time of the federal petition." *Id.* (quoting *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982)). But when state court remedies are no longer available, procedural default rather than exhaustion applies. *Id.*

### Exhaustion

A federal court may not grant a writ of habeas corpus unless the petitioner has exhausted all available remedies in state court. 28 U.S.C. § 2254(b)(1)(A). A state defendant with federal constitutional claims must fairly present those claims to the state courts before raising them in a federal habeas corpus action. 28 U.S.C. § 2254(b),(c); *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor*, 404 U.S. 270, 275–76 (1971); *see also Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006) ("Federal courts do not have jurisdiction to consider a claim in a habeas petition that was not 'fairly presented' to the state courts") (quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003)). A constitutional claim for relief must be presented to the state's highest court to satisfy the fair presentation requirement. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845-48 (1999); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990). And a habeas petitioner must present both the factual and legal underpinnings of the claims to the state courts. *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). This means that the "petitioner must present his claim to the state courts as a federal constitutional issue— not merely as an issue arising under state law." *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984).

*Procedural default*

Procedural default may occur in two ways. *Williams*, 460 F.3d at 806. First, a petitioner procedurally defaults a claim by failing "to comply with state procedural rules in presenting [the] claim to the appropriate state court." *Id*. In *Maupin v. Smith*, the Sixth Circuit directed courts to consider four factors when determining whether a claim is barred on habeas corpus review due to a petitioner's failure to comply with a state procedural rule: whether (1) there is a state procedural rule applicable to the petitioner's claim and whether the petitioner failed to comply with that rule; (2) the state court enforced the procedural rule; (3) the state procedural rule is an adequate and independent state ground on which the state can foreclose review of the federal constitutional claim; and (4) the petitioner can demonstrate cause for failing to follow the rule and actual prejudice by the alleged constitutional error. 785 F.2d 135, 138 (6th Cir. 1986); *see also Williams*, 460 F.3d at 806 ("If, due to the petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.") (citing *Maupin*, 785 F.2d at 138).

Second, "a petitioner may procedurally default a claim by failing to raise a claim in state court, and pursue that claim through the state's 'ordinary appellate review procedures.'" *Williams*, 460 F.3d at 806 (citing *O'Sullivan*, 526 U.S. at 848). "If, at the time of the federal habeas petition, state law no

longer allows the petitioner to raise the claim, the claim is procedurally defaulted." *Id*. While the exhaustion requirement is satisfied because there are no longer any state remedies available to the petitioner, *see Coleman v. Thompson*, 501 U.S. 722, 732 (1991), the petitioner's failure to have the federal claims considered in the state courts constitutes a procedural default of those claims that bars federal court review, *Williams*, 460 F.3d at 806.

To overcome a procedural bar, petitioners must show cause for the default and actual prejudice that resulted from the alleged violation of federal law that forms the basis of their challenge, or that there will be a fundamental miscarriage of justice if the claims are not considered. *Coleman*, 501 U.S. at 750.

*Merits review*

If a state's courts adjudicated the merits of a claim, a habeas petitioner may obtain habeas relief under 28 U.S.C. § 2254, if the petitioner can establish one of two predicates. To establish the first predicate, the petitioner "must identify a 'clearly established' principle of 'Federal law' that" has been established by a holding of the Supreme Court. *Fields v. Jordan*, 86 F.4th 218, 231 (6th Cir. 2023) (en banc); *see* 28 U.S.C. § 2254(d)(1). The petitioner must then show that state's court's adjudication "was *contrary to*," or "involved an *unreasonable application* of" that "clearly established" precedent. 28 U.S.C. § 2254(d)(1) (emphasis added); *see Fields*, 86 F.4th at 232.

To establish the second predicate, the petitioner must show that the state's court's adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the [United States Supreme] Court on a question of law or" based on "a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "[A]n 'unreasonable application of'" the Court's holdings is one that is "'objectively unreasonable,' not merely wrong; even 'clear error' will not suffice." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 75–76 (2003)).

"[A] 'clearly established' principle of 'Federal law' refers to the "holdings," not "dicta," of the Supreme Court's decisions. *Fields*, 86 F.4th at 231 (quoting *White*, 572 U.S. at 419). A state court is not required to cite Supreme Court precedent or reflect an "awareness" of Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts" such precedent. *Early v. Packer*, 537 U.S. 3, 8 (2002); *Lopez v. Wilson*, 426 F.3d 339, 358 (6th Cir. 2005). If the Supreme Court has not

28

addressed the petitioner's specific claims, a reviewing district court cannot find that a state court acted contrary to, or unreasonably applied, Supreme Court precedent or clearly established federal law. *Carey v. Musladin*, 549 U.S. 70, 77 (2006); *see White*, 572 U.S. at 426 ("Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error.").

In determining whether the state court's decision involved an unreasonable application of law, the Court uses an objective standard. *Williams*, 529 U.S. at 410. "A state court's determination that a claim lacks merit precludes federal habeas review so long as 'fair-minded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)); *see also Bray v. Andrews*, 640 F.3d 731, 738 (6th Cir. 2011). "[A] state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington*, 562 U.S. at 103.

**Discussion**

*Ground one is not cognizable*

In ground one, Barnette argues that the warrant that was used by law enforcement to arrest him lacked probable cause. Doc. 13, at 7; Doc. 17-2, at 5.

In *Stone v. Powell*, the United States Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." 428 U.S. 465, 494 (1976). For the *Powell* rule to apply, the State must have provided, in the abstract, a mechanism to raise the Fourth Amendment claim and the presentation of that claim must not have been frustrated by failure of that mechanism. *Riley v. Gray*, 674 F.2d 522, 526 (6th Cir. 1982). "[T]he *Powell* 'opportunity for full and fair consideration' means an available avenue for the prisoner to present his claim to the state courts, not an inquiry into the adequacy of the procedure actually used to resolve that particular claim." *Good v. Berghuis*, 729 F.3d 636, 639 (6th Cir. 2013). So when considering whether a petitioner had a full and fair opportunity to litigate his Fourth Amendment claim, the court "asks a more basic and readily administrable question: Did the state courts permit the defendant to raise the claim or not?" *Id.* at 640.

Here, "[t]he mechanism provided by the State of Ohio for the resolution of fourth amendment claims is, in the abstract, clearly adequate." *See Riley*,

674 F.2d at 526 (explaining that Ohio law permits a criminal defendant to raise fourth amendment claims in a pre-trial motion to suppress and to appeal that ruling). Barnette didn't file a motion to suppress, but he hasn't alleged that he was "frustrated by failure of [the State of Ohio's] mechanism." *See id*. So he hasn't shown that the rule in *Powell* wouldn't serve as a bar to his claim, and ground one is not cognizable.

*Grounds two, four, five, and six are not cognizable*

In grounds two, four, five, and six, Barnette raises challenges about the grand jury and his resulting indictment.[6] Doc. 13, at 7–9; Doc. 17-2 at 7–12. These grounds are not cognizable. The Constitution's indictment requirement has never "been applied to the states." *Koontz v. Glossa*, 731 F.2d 365, 369 (6th Cir. 1984). All that is required when a state charges a defendant is sufficient notice. *Id*.; *see Mira v. Marshall*, 806 F.2d 636, 639 (6th Cir. 1986). As a result, "[b]eyond notice," which Barnette has not contested, "a claimed deficiency in a state criminal indictment is not cognizable on federal collateral review." *Roe v. Baker*, 316 F.3d 557, 570 (6th Cir. 2002); *see also Ross v. Ohio Dep't of Corr. Rehabs.*, No. 21-cv-1565, 2023 WL 8789169, at *10 (N.D. Ohio Nov. 28, 2023), *report and recommendation adopted sub nom. Ross v. Schweitzer*, 2023 WL 8781364 (N.D. Ohio Dec. 19, 2023), *and objections overruled sub nom. Ross v. Schweitzer*, 2024 WL 416834 (N.D. Ohio Feb. 5, 2024).

---

[6] To the extent that ground five could be construed as challenging the probable cause finding, Doc. 13, at 8–9, it would be not cognizable for the same reason that ground one is not cognizable.

> *Ground three is not cognizable. To the extent it contains a stand-alone prosecutorial misconduct claim, the claim is procedurally defaulted and fails on the merits.*

In ground three, Barnette argues that "the prosecutor is holding the complaint" and "the grand jury records" in violation of Barnette's due process rights and *United States v. Williams*, 504 U.S. 36 (1992). Doc. 13, at 8; Doc. 17-2, at 9. He also argues that the prosecutor's actions violate the "Separation of Powers Doctrine." Doc. 13, at 8; Doc. 17-2, at 9.

This claim challenges the grand jury process and the indictment, so it is not cognizable for the same reasons explained above.

To the extent that this claim alleges prosecutorial misconduct, Barnette hasn't shown that he is entitled to relief. First, Barnette's reliance on *Williams* is puzzling because in that case the Supreme Court reversed a lower federal court's ruling, which had, in turn, dismissed an indictment because the prosecutor failed to present exculpatory evidence to the grand jury. 504 U.S. at 39–40, 46–47, 51–52. The Supreme Court explained that "courts have no authority to prescribe such a duty pursuant to their inherent supervisory authority over their own proceedings." *Id.* at 55. It's not clear why Barnette believes that *Williams* was violated in his case. He doesn't explain how the prosecutor allegedly violated the rule in *Williams*, the Due Process Clause, or "The Separation of Powers Doctrine," Doc. 13, at 8, so he has failed to present a coherent argument. And this Court is not required to guess what his arguments might be. *See Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004)

("[l]iberal construction [of a pro se habeas petition] does not require a court to conjure allegations on a litigant's behalf") (quoting *Erwin v. Edwards*, 22 F. App'x 579, 580 (6th Cir. 2001)).

Also, Barnette's prosecutorial misconduct claim based on the prosecutor "holding the grand jury records" is procedurally defaulted. Barnette raised this claim in his fourth state post-conviction petition in June 2022,[7] Doc. 30-3, at 316, but the trial court denied it as untimely and barred by res judicata, *id*. at 342. Barnette didn't appeal. *See id*. at 501–02. So he procedurally defaulted this claim for two reasons. First, he didn't appeal. *See O'Sullivan*, 526 U.S. at 845 (a petitioner must present a claim to the state appellate court and the state supreme court for discretionary review or it is procedurally defaulted); *Williams*, 460 F.3d at 806 (a petitioner must raise a claim in state court "and pursue that claim through the state's 'ordinary appellate review procedures'"). Second, his petition was untimely and barred by res judicata. *See Smith v. Warden, Toledo Corr. Inst.*, 780 F. App'x 208, 219 (6th Cir. 2019) (claims raised in a post-conviction petition that the state court denies as untimely are procedurally defaulted) (citing *Walker v. Martin*, 562 U.S. 307, 310–11 (2011)); *see Coleman v. Mitchell*, 268 F.3d 417, 427 (6th Cir. 2001) (claims raised in a post-conviction petition that the state court denies on the basis of res judicata are procedurally defaulted) (citing *State v. Perry*, 226 N.E.2d 104, 108 (Ohio

---

[7]     Barnette also asked for grand jury records in January 2017. Doc. 30-1, at 755. The trial court overruled Barnette's request, *id*. at 762, and Barnette didn't appeal.

1967)). Barnette hasn't alleged cause to excuse the procedural default. And for the reasons discussed below as to ground eight, he hasn't shown actual innocence to overcome the procedural default.

Moreover, Barnette's prosecutorial misconduct claim fails on the merits. In support of ground three, Barnette alleges that a former Mahoning County Prosecutor, Dawn Cantalamessa, "has be[en] ac[c]used of presenting misleading, insufficient evidence to the grand jury to obtain indictment, and in some case[s] disregarding the grand jury process as such." Doc. 17-2, at 8–10. It's not clear what this allegation has to do with the claim Barnette alleges in ground three—that the prosecution is "holding the grand jury testimony." Doc. 13, at 9. But the cases he cites, Doc. 17-2 at 7, involve Cantalamessa's handling of grand jury matters in two other Mahoning County criminal cases, "*State v. Marquan White*, Mahoning Cty. C.P. No. 15-CR-538, and *State v. Kalilo Robinson*, Mahoning Cty. C.P. No. 16-CR-342." *See Desmond v. Mahoning Cnty. Prosecutor's Off.*, 134 N.E.3d 280, 284 (Ohio Ct. App. 2019); *see also Desmond v. State*, 141 N.E.3d 1052, 1056 (Ohio Ct. App. 2020). Barnette hasn't shown that Cantalamessa presented Barnette's case to the grand jury, or that she committed misconduct in his case. So he hasn't shown that the prosecutor's conduct "'so infected [his] trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974)).

34

To the extent that Barnette's arguments about Cantalamessa could be construed as alleging cause to excuse his procedural default, *see* Doc. 17-2, at 9–10 (asserting that "evidence of misconduct was not previously available"), the arguments would fail. This is so because complaints about Cantalamessa's conduct surfaced in 2019, at the latest, *see Desmond*, 134 N.E.3d 280, and Barnette didn't raise a claim related to the prosecutor "holding the grand jury testimony" until June 2022. Doc. 30-3, at 306, 316. And he doesn't explain how learning of the allegations against Cantalamessa is related to his purported discovery that the prosecutor was "holding the grand jury testimony." *See* Doc. 30-1, at 755. All told, Barnette is not entitled to relief on ground three.

> *Ground seven in Barnette's motion is not cognizable, and the version of ground seven in Barnette's appellate brief fails on the merits*

In Barnette's Motion to reopen, ground seven reads:

> **Lack Of Standing**
>
> If an agency is not vested with authority by law, it lacks standing to bring a standing to bring a complaint, so the courts lack subject matter jurisdiction. In this case, the Government has not proven standing, meaning they have no standing, rendering the proceeding void.

Doc. 13, at 9. Barnette provides no other explanation for ground seven. Construing ground seven as a challenge to the trial court's jurisdiction over his case, ground seven is not cognizable. "[A] state court's interpretation of state jurisdictional issues conclusively establishes jurisdiction [in the state court] for purposes of federal habeas review." *Strunk v. Martin*, 27 F. App'x 473, 475 (6th

Cir. 2001); *see also Wills v. Egeler*, 532 F.2d 1058, 1059 (6th Cir. 1976) ("Determination of whether a state court is vested with jurisdiction under state law is a function of the state courts, not the federal judiciary.").

But in his appellate brief before the Sixth Circuit, Doc. 17-2, Barnette described ground seven as something different. In this filing, Barnette alleged "prosecutorial vindictiveness." *Id*. at 12. He cited the "misleading evidence [the detective] presented to the grand jury"[8] and alleges that this evidence was insufficient to establish probable cause to indict him. *Id*. at 12–13. To the extent Barnette alleges that the evidence presented to the grand jury—the victims were suffocated by trash bags placed over their heads—was insufficient to establish probable cause, the claim is not cognizable for the reasons explained in ground one.

And to the extent that Barnette alleges prosecutorial vindictiveness, he only cites the allegations against the former prosecutor Cantalamessa in two criminal cases that weren't related to Barnette's case. Doc. 13, at 12–14. Barnette never presented a prosecutorial vindictiveness claim to the state courts, as he concedes. Doc. 17-2, at 14. This means that his claim is unexhausted. It is difficult to imagine an avenue for Barnette to pursue such a claim now, given all of the state court filings he has made over the years, many of which were rejected as untimely and barred by res judicata. But even

---

[8] It's unclear how Barnette would know what was presented to the grand jury, since he complains that "the prosecution is holding the grand jury records." Doc. 13, at 8.

assuming, without deciding, that Barnette could still have an avenue to raise such a claim in state court, this Court should reject it because it "is plainly meritless." *See Rhines v. Weber*, 544 U.S. 269, 277 (2005); *Prather v. Rees*, 822 F.2d 1418, 1422 (6th Cir. 1987).

"For an agent of the State to pursue a course of action whose objective is to penalize a person's reliance on his protected statutory or constitutional rights is 'patently unconstitutional.'" *Bragan v. Poindexter*, 249 F.3d 476, 481 (6th Cir. 2001) (quoting *United States v. Goodwin*, 457 U.S. 368, 372 n.4 (1982)). To establish prosecutorial vindictiveness, Barnette must either demonstrate "actual vindictiveness"—"objective evidence showing that a prosecutor acted in order to punish the defendant for standing on his legal rights"—or that in "the particular factual situation presented, there existed a 'realistic likelihood of vindictiveness' for the prosecutor's action."[9] *See Bragan*, 249 F.3d at 481–82 (internal quotation marks and citations omitted). Barnette has shown neither. He only suggests that because allegations of impropriety were made against a former Mahoning County Prosecutor in two unrelated criminal cases, there must have been prosecutorial vindictiveness in his case. Doc. 17-2, at 14. These allegations are insufficient; they don't begin to show that the "prosecutor acted … to punish" Barnette "for standing on his legal

---

[9]    To show that "there existed a 'realistic likelihood of vindictiveness' for the prosecutor's action," a "petitioner must establish that (1) the prosecutor has 'some stake' in deterring the petitioner's exercise of his rights and (2) the prosecutor's conduct was somehow 'unreasonable.'" *Bragan*, 249 F.3d at 481–82 (citations omitted).

rights," or that there was a "'realistic likelihood of vindictiveness' for the prosecutor's action." *See Bragan*, 249 F.3d at 481–82. This version of ground seven fails on the merits.

*Ground eight is not cognizable*

In ground eight of his Motion, Barnette challenges his indictment and the state court's jurisdiction. Doc. 13, at 10. This claim is not cognizable, as explained above in the discussion of grounds two, four, five, six, and seven. Ground eight of Barnette's appellate brief is an actual innocence claim. Doc. 17-2, at 15. This claim is not cognizable. *See Cress v. Palmer*, 484 F.3d 844, 854 (6th Cir. 2007) (stand-alone actual-innocence claims are not cognizable in federal habeas).

To the extent that Barnette's actual innocence claim could be considered an argument to overcome a procedural default, it would fail. Barnette must show that he suffered a fundamental miscarriage of justice such that his is "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986). A claim of actual innocence "requires the petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

Barnette doesn't identify new, reliable evidence that was not presented at trial. Instead, he only cites evidence that was presented at trial. He argues, without evidentiary support, that the plastic bags that were wrapped around the victims' heads did not show that the victims died of suffocation, as the State had argued. Doc. 17-2, at 16–17; *see, e.g.*, Doc. 7-4, at 34–123 (the medical examiner's trial testimony regarding the cause of death). Barnette references exhibits that were presented at trial. Doc. 17-2, at 16–17 (referencing exhibit 412, a photo of the doctor "putting his finger through a hole in the trash bag that one of the victims chewed through," and exhibit 363, "show[ing] marks as if Darry Woods was strangulated"); *see* Doc. 7-4, at 61, 105–06 (the doctor discussing at trial exhibits 393 and 412). Barnette says that the victims' death certificates indicated that the cause of death was "pending," Doc. 17-2, at 17, but the death certificates were also discussed at trial and admitted into evidence, Doc. 7-4, at 14, 27, 84, 100 (receiving into evidence exhibit numbers 198 and 199, the coroner's reports, which included the victims' death certificates). So Barnette has not presented new, reliable evidence that was not presented at trial to show actual innocence to overcome any procedural defaults. *See Schlup*, 513 U.S. at 324.

*Ground nine is time-barred*

In Barnette's ninth ground, which is the first ground he raised in his 2023 petition, he argues that trial counsel was ineffective "for failing to proper[ly] investigate before promising Sherrica Barnette as a witness in

opening statements and later abandoning that promise." Doc. 24-2, at 5. Barnette explains that trial counsel told the jury that they would hear from Barnette's sister, who:

> was at home that afternoon [of the murders]. She had periodic contact with Lorenza until he was picked up again by Austria Wright at around six p.m. When Austria picked Lorenza up at six p.m., they drove to Austria's apartment in Liberty where the two had planned to go earlier that day. The testimony and evidence will establish that Lorenza, was not there when Jaron and Darry came to their deaths.

*Id*. at 5–6; Doc. 32, at 13–14; *see* Doc. 7-2, at 84. This matters, Barnette asserts, because during closing argument the prosecutor brought to the jury's attention the fact that Barnette didn't call any witnesses. Doc. 24-2, at 6; Doc. 7-7, at 81–82.

Review of the transcript[10] shows that the State mentioned that Barnette didn't call any witnesses to contest the State's DNA witnesses, Doc. 7-7, at 81–82, not that Barnette didn't call his sister to testify. The State's reference in closing rebuttal to Barnette not calling a DNA witness was in response to Barnette's closing argument, in which his attorney at length challenged the State's DNA evidence and DNA witnesses' testimony. *Id*. at 54–67.

---

[10]    In his traverse, Barnette complains that the Warden "did not provide the trial transcripts which are essential to assess the … error at trial." Doc. 32, at 2. But the Warden filed the trial transcripts with his Return of Writ in 2016. *See* Doc. 7-2 through Doc. 7-7. The Warden wasn't required to re-file them.

40

In any event, this claim is time-barred. AEDPA provides a one-year limitations period in a habeas action brought by a person in custody from a state court judgment. Under 28 U.S.C. § 2244(d)(1), the limitation period runs from the latest of—

> (A)     the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B)     the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C)     the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D)     the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

Barnette's conviction occurred in 2011, but Barnette was resentenced in 2021 so the trial court could advise him of his post-release control. That resentencing re-started the one-year limitations period. *See Crangle v. Kelly*, 838 F.3d 673, 675 (6th Cir. 2016). The trial court issued its resentencing entry on June 28, 2021. Doc. 30-2, at 154. Barnette didn't appeal, so his conviction became "final" under section 2244(d)(1)(A) when his time to appeal ran out 30 days later, on July 28, 2021. *See* Ohio App. R. 4(A)(1). The limitations period

began running the next day, *see Bronaugh v. Ohio*, 235 F.3d 280, 285 (6th Cir. 2000) (the statute of limitations begins running the day after the event or default), and expired one year later, on July 29, 2022. Barnette filed his habeas petition on October 8, 2023,[11] Doc. 24, at 15, more than a year too late.[12]

The statute of limitations is tolled for any period in which a properly filed petition for post-conviction relief is pending before the state courts. 28 U.S.C. § 2244(d)(2); *see Wall v. Kholi*, 562 U.S. 545, 550–51 (2011). To toll the running of the statute of limitations, however, a post-conviction motion must be properly filed. A post-conviction application is not properly filed unless "'its delivery and acceptance [follow] the applicable laws and rules governing filings'—including any state-imposed time limits." *Davis v. Bradshaw*, 900 F.3d 315, 323 (6th Cir. 2018). Under this "understanding, a [post-conviction] petition filed after a time limit, and which does not fit within any exceptions to that limit, is no more 'properly filed' than a petition filed after a time limit that permits no exception." *Pace v. DiGuglielmo*, 544 U.S. 408, 413 (2005). Moreover, the statutory tolling provision does not "'revive' the limitations period (i.e., restart the clock at zero); it can only serve to pause a clock that has not yet fully run. Once the limitations period is expired, collateral petitions can

---

[11]     A petition is deemed filed when a petitioner places it the prison mailing system. *Houston v. Lack*, 487 U.S. 266, 270 (1988).

[12]     Barnette doesn't argue that any of the other subsections of section 2244(d)(1) apply, and none would appear to provide a later limitations start-date.

no longer serve to avoid a statute of limitations." *Vroman v. Brigano*, 346 F.3d 598, 602 (6th Cir. 2003) (citation omitted).

Although Barnette submitted to the state court various filings after his June 2021 resentencing, none of them tolled the limitations period. In August 2021, he filed a petition to disclose grand jury transcripts for a separate federal lawsuit he had filed. Doc. 30-2, at 463. But a "request for information and the request for a copy of the record are not challenges to the conviction or judgment" and "do not toll the statute of limitations." *See Johnson v. Randle*, 28 F. App'x 341, 343 (6th Cir. 2001). Even if this petition had tolled the limitation period, it would only have tolled the limitations period for the 45 days it was pending in state court, *see* Doc. 30-2, at 479, which barely puts a dent in the 14-month gap that Barnette needs to fill for his petition to be timely.[13]

Next, Barnette filed a post-conviction petition in February 2022—his third post-conviction petition—but the Ohio courts denied the petition as untimely. Doc. 30-3, at 116, 223–26. So it didn't toll the limitations period. *See Pace*, 544 U.S. at 414 (because an untimely postconviction petition is not *properly filed* under section 2244(d)(2), it doesn't toll the limitations period). Barnette argues that the Ohio courts should not have denied this petition as

---

[13]     Barnette didn't appeal the trial court's ruling, and the time that he could have appealed isn't added to the tolling time. *See Scarber v. Palmer*, 808 F.3d 1093, 1095–96 (6th Cir. 2015) (when a defendant does not appeal a ruling during state collateral review, the time to appeal is not included as tolling time).

untimely because, according to Barnette, all of his state court appellate rights re-started in 2021, when he was resentenced. Doc. 32, at 11. The Ohio court of appeals rejected Barnette's characterization of state law, which he had based on the federal habeas case *King v. Morgan*, 807 F .3d 154 (6th Cir. 2015). The Ohio court of appeals explained:

> {¶15} While Appellant frames this issue as one regarding the timeliness of filing his petition, his argument actually addresses the scope of his appeal. The Ohio Supreme Court has held that "[t]he scope of an appeal from a resentencing hearing in which a mandatory term of postrelease control is imposed is limited to issues arising at the resentencing hearing." *State v. Fischer*, 128 Ohio St.3d 92, 2010-Ohio-6238, 942 N.E.2d 332, *overruled on other grounds by State v. Harper*, 160 Ohio St.3d 480, 2020-Ohio-2913, 159 N.E.3d 248.

> {¶16} In fact, in a prior appeal, Appellant raised an argument that the trial court improperly held a full resentencing hearing instead of a limited hearing solely on the issue of postrelease control. *Barnette V*, ¶ 21. We agreed with Appellant and remanded the matter for the purpose of holding a hearing limited solely to the matter of postrelease control. Thus, this record shows Appellant clearly understood his remand was for the limited purpose of addressing postrelease control.

> {¶17} The Fifth District has held that "[t]he scope of an appeal from a resentencing hearing in which a mandatory term of post-release control is imposed is limited to issues arising at the resentencing hearing." *State v. Mathews*, 5th Dist. Richland No. 18 CA 50, 2018-Ohio-3839, ¶ 18, citing *State v. Cottrill*, 5th Dist. Licking No. 10-CA-28, 2011-Ohio-4599, ¶ 15; *Fischer*, 128 Ohio St.3d 92, 2010-Ohio-6238, paragraph four of the syllabus.

44

{¶18} The *King* case cited by Appellant involves a specific federal law that was raised in a habeas corpus petition. The *King* court specifically noted that habeas, unlike other filings, allows review of claims that could or should have been raised in earlier court filings. *Id.* at 159-160. A petition seeking all other postconviction relief operates differently than habeas corpus, and res judicata does apply in all other postconviction petitions. In addition, the *King* court recognized that the specific law under review, the Anti-Terrorism and Effective Death Penalty Act, provided a new entry filed pursuant to this Act did reset the statute of limitations clock. However, this provision narrowly applies only to this Act. *Id.* at 159-160.

{¶19} As such, Appellant's first assignment of error is without merit and is overruled.

*State v. Barnette*, No. 22 MA 0076, 2023 WL 4482558, at *3; Doc. 30-3, at 224–25.

To the extent that the Ohio court of appeals relied on Ohio law when it found that a Sixth Circuit case interpreting AEPDA's limitations start-date had no bearing on Ohio appellate rights, that finding is binding on this Court. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus"). To the extent that the Ohio court of appeals interpreted federal law to evaluate Barnette's claim challenging Ohio's post-conviction proceedings, the claim is not cognizable here because "errors in post-conviction proceedings are outside the scope of federal habeas corpus review." *Cress v. Palmer*, 484 F.3d at 853 (citing *Roe*, 316 F.3d at 571, and *Kirby v. Dutton*, 794 F.2d 245,

45

246-47 (6th Cir. 1986)); *see Leonard v. Warden, Ohio State Penitentiary*, 846 F.3d 832, 854 (6th Cir. 2017). Finally, Barnette hasn't shown that the Ohio court of appeals' decision ran afoul of United States Supreme Court precedent. For all of these reasons, Barnette hasn't shown that his February 2022 post-conviction petition was properly filed under Ohio law, so the petition doesn't toll the limitations period.

Moving on, in March 2022, Barnette filed in the trial court a motion for a revised sentence and argued that the June 28, 2021 resentencing entry did not comply with Ohio law. Doc. 30-3, at 283–84. Even if this motion could have tolled the limitations period, the trial court denied Barnette's motion 14 days later, *id*. at 298, and Barnette didn't appeal. So this motion was only pending for 14 days—not long enough to make Barnette's petition timely, even adding the possible 45 days that his petition to disclose grand jury transcripts was pending.

In May 2022, Barnette filed a writ of mandamus, asking the Ohio court of appeals to compel the trial judge to issue a revised sentencing entry. Doc. 30-4, at 72, 76. But mandamus actions asking a state court to take action on a matter do not toll the limitations period. *See Tolbert v. Warden, Warren Corr. Inst.*, No. 1:15-CV-293, 2015 WL 9460472, at *4–5 (S.D. Ohio Dec. 28, 2015) (collecting cases), *report and recommendation adopted sub nom. Tolbert v. Warren Corr. Inst.*, No. 2016 WL 205472 (S.D. Ohio Jan. 15, 2016).

Barnette's fourth post-conviction petition, which he filed in June 2022, Doc. 30-3, at 306, didn't toll the limitations period because the court rejected it as untimely, *id*. at 342. *See Pace*, 544 U.S. at 414. And Barnette's October 2021 motion to reopen in his federal habeas case doesn't toll the limitations period because under 28 U.S.C. § 2244(d)(2), only state post-conviction or collateral review filings toll the limitations period. *Duncan v. Walker*, 533 U.S. 167, 181–82 (2001).

Finally, because the one-year limitations period expired on July 29, 2022, all of Barnette's filings after that date—his March 2023 application for DNA testing and his February and April 2023 complaints for writ of mandamus—do not toll the limitations period.[14] *See Vroman*, 346 F.3d at 602 ("Once the limitations period is expired, collateral petitions can no longer serve to avoid a statute of limitations").

Barnette may also be entitled to equitable tolling if "'he has been pursuing his rights diligently'" and "'some extraordinary circumstance stood in his way' and prevented timely filing." *See Holland v. Florida*, 560 U.S. 631, 649 (2010) (quoting *Pace*, 544 U.S. at 418). Barnette bears the burden of "persuading the court" that he is entitled to equitable tolling. *See Griffin v. Rogers*, 308 F.3d 647, 653 (6th Cir. 2002). He has not done so here. His ineffective-assistance-of-trial-counsel claim is based on the trial court record,

---

[14]     The result would be the same even if the Court were to credit Barnette for the 60 total days that his petition for grand jury transcripts and his motion to revise sentence were pending.

so Barnette knew about the facts supporting this claim since 2011. And as the Ohio court of appeals observed in June 2023 when it rejected his third post-conviction petition, "[Barnette] has filed six appeals in addition to his direct appeal and never attempted to raise this specific argument in any of those appeals …. [he] has not explained why he has waited twelve years since his conviction, and seven earlier appeals later, to raise this issue." Doc. 30-3, at 226. And although actual innocence may overcome a time-bar, *see Patterson v. Lafler*, 455 F. App'x 606, 609 (6th Cir. 2012) (citing Murray, 477 U.S. at 495–96), Barnette hasn't shown actual innocence, as described above in ground eight.[15]

---

[15]    This claim is also procedurally defaulted because the Ohio courts rejected it as untimely. Doc. 30-3, at 116, 223. To excuse this procedural default, Barnette argues that he could not have been expected to raise the claim on direct appeal, where it should have been raised, because his appellate counsel and trial counsel were the same. Doc. 36, at 1–2. This argument implicates the rule in *Martinez v. Ryan*, 566 U.S. 1 (2012), and *Trevino v. Thaler*, 569 U.S. 413 (2013). Together, these cases say that where a state law requires a defendant to raise an ineffective-assistance-of-trial-counsel claim in an initial-review collateral proceeding, or makes it unlikely that a defendant will have a meaningful opportunity to raise such a claim on direct appeal, ineffective assistance of counsel—or no counsel—in a collateral proceeding could serve as cause to excuse the procedural default of that claim. *See, e.g., White v. Warden, Ross Corr. Inst.*, 940 F.3d 270, 276 (6th Cir. 2019). Even if this doctrine could conceivably apply here, Barnette has not shown that he would be entitled to redress. This is so because the *Martinez-Trevino* rule only applies to initial-review proceedings; "[i]t does not extend to attorney errors in any proceeding beyond the first occasion the State allows a prisoner to raise a claim of ineffective assistance at trial." And here, Barnette didn't raise his ineffective-assistance claim until his *third* post-conviction petition.

*Ground ten is moot*

In ground ten, the second ground in his 2023 petition, Barnette argues that his 2023 petition is not a successive petition. Doc. 24-2, at 6. But this Court has already consolidated Barnette's second-filed habeas case with his first, *see* Docs. 21, 22, and I have evaluated the ineffective-assistance claim that Barnette raised in his new petition. So ground ten is moot.

*Barnette's motions for discovery are denied*

Barnette has filed a motion for an evidentiary hearing. Doc. 35. He argues that that to evaluate his ineffective-assistance claim, this Court needs evidence outside the record—the reasons why his attorney "abandon[ed] his promise" to the jury that Sherrica Barnette testify at trial. *Id*. at 1. This implicates ground nine, the first ground that Barnette raised in his new petition. Doc. 24-2, at 5. But Barnette's ineffective-assistance claim is time-barred, so he is not entitled to an evidentiary hearing. *See Young v. Gray*, No. 1:19-cv-416, 2020 WL 1990987, at *8 (N.D. Ohio Jan. 14, 2020) (an evidentiary hearing is appropriate only if a petition is not dismissed) (citing Rule 8(a) of the Rules Governing Section 2254 Cases and collecting cases), *report and recommendation adopted*, 2020 WL 1986481 (N.D. Ohio Apr. 27, 2020).

Barnette also filed a request for leave to take discovery and asserts the same basis—that to evaluate ground nine, this Court needs to know why counsel did not call Sherrica Barnette to testify at trial. Doc. 38.

"[H]abeas petitioners, unlike the usual civil litigant in federal court, [are] not entitled to discovery as a matter of ordinary course." *Stojetz v. Ishee*, 892 F.3d 175, 207 (6th Cir. 2018) (quoting *Bracy v. Gramley*, 520 U.S. 899, 904 (1997)). "A district court has discretion to grant discovery in a habeas case [based] []on a fact[-]specific showing of good cause under Rule 6." *Stanford v. Parker*, 266 F.3d 442, 460 (6th Cir. 2001). The petitioner must "'present[] specific allegations showing [a] reason to believe that the facts, if fully developed, may lead the district court to believe that federal habeas relief is appropriate.'" *Stojetz*, 892 F.3d at 207 (quoting *Johnson v. Mitchell*, 585 F.3d 923, 934 (6th Cir. 2009)). Neither "vague musings," *Stojetz*, 892 F.3d at 207, nor "[c]onclusory allegations are … enough to warrant discovery," *Williams v. Bagley*, 380 F.3d 932, 974 (6th Cir. 2004). Rather "the petitioner must set forth specific allegations of fact." *Id*.

Here, Barnette's ineffective-assistance claim is time-barred. So Barnette hasn't shown that, "if the facts are fully developed" as to why counsel didn't call Sherrica Barnette to testify at trial, he may "be able to demonstrate that he is ... entitled to relief." *See Bracy*, 520 U.S. at 908–09. I deny Barnette's request for leave to take discovery.

**Conclusion**

For the reasons set forth above, I recommend that the Court dismiss Barnette's claims raised in his 2021 Motion to reopen and 2023 petition. I deny Barnette's motions for an evidentiary hearing, Doc. 35, and for leave to take discovery, Doc. 38.

Dated: August 14, 2024

/s/ James E. Grimes Jr.
James E. Grimes Jr.
U.S. Magistrate Judge

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F.3d 520, 530–31 (6th Cir. 2019).